MATTHEW A. LESNICK (SBN 177594)
matt@lesnickprince.com
CHRISTOPHER E. PRINCE (SBN 183553)
cprince@lesnickprince.com
ANDREW R. CAHILL (SBN 233798)
acahill@lesnickprince.com
LESNICK PRINCE & PAPPAS LLP
185 Pier Avenue, Suite 103
Santa Monica, CA 90405
Telephone: (310) 396-0964
Facsimile: (310) 396-0963

Proposed Counsel for Debtor and Debtor in Possession Church and State, LP

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>CHURCH AND STATE, LP,<br><br>Debtor and Debtor in Possession. | Case No. 2:17-bk-18767-BR<br><br>Chapter 11<br><br>**DECLARATION OF YASSMIN SARMADI IN SUPPORT OF (1) DEBTOR'S EMERGENCY MOTION FOR ORDER AUTHORIZING DEBTORS TO PAY AND HONOR PREPETITION WAGES, SALARIES, AND OTHER COMPENSATION AND BENEFITS; AND (2) DEBTOR'S EMERGENCY MOTION FOR ORDER AUTHORIZING DEBTOR TO PROVIDE ADEQUATE ASSURANCE OF FUTURE PAYMENT TO UTILITY COMPANIES**<br><br>[Hearing to be Set by Court]<br><br>[Hon. Barry Russell, Courtroom 1668] |

# **DECLARATION OF YASSMIN SARMADI**

I, Yassmin Sarmadi, declare as follows:

1. I am over 18 years of age. I am the General Manager of Business Operations of Church and State, LP (the "Debtor"). I make this declaration in support of (1) Debtor's Emergency Motion for Order Authorizing Debtors to Pay and Honor Prepetition Wages, Salaries, and Benefits and (2) Debtor's Emergency Motion for Order Authorizing Debtor to Provide Adequate Assurance of Future Payment to Utility Companies. I have personal knowledge of the following facts and if called and sworn as a witness, I could and would testify competently thereto, under oath

2. On July 18, 2017 (the **"Petition Date"**), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. No trustee, examiner, or committee has been appointed in this chapter 11 case, and the Debtor continues to manage its financial affairs and operations as a debtor in possession.

**A.    GENERAL BACKGROUND AND INFORMATION ON EMPLOYEE WAGES**

3. The Debtor is a bistro serving French cuisine with high quality ingredients sourced from organic farms. Menu items at the restaurant, Church and State, include French classics like steak frites and house-made Charcuterie, as well as the finest artisanal cheeses. The restaurant also offers a full-service bar with seasonal hand-crafted cocktails, and an all-French wine list containing many organic selections.

4. The Debtor was one of the pioneers that helped to revitalize the Arts District, opening in 2008. Since its opening, the restaurant has received numerous positive reviews from publications spanning the *Los Angeles Times*, *LA Weekly*, the *New York Times*, *Bon Appetit*, and *Food and Wine*. Back when the *Los Angeles Times* gave star ratings, Church and State received a three star ranking. I understand that in the history of the star ratings by the Los Angeles Times food review, a four star ranking was awarded on very few occasions (and, in fact, one was the former restaurant where Church and State's head chef, Tony Esnalt, worked as the head chef). In a 2014 review, the Los Angeles

2

Times' Jonathan Gold remarked that Church and State featured "the best coq au vin I can remember having." Various culinary magazines also have published recipes from the restaurant.

5. Church and State's head chef, Tony Esnault, has been revered as a leader in the world of French cuisine. Prior to joining Church and State, he received a three star Michelin rating at the Essex House in New York, and a two star Michelin rating at Adour Restaurant in the St. Regis Hotel in New York, and was head chef at a number other restaurants throughout the United States and France, including the Dining Room at the Ritz Carlton in San Francisco and Boston, and Le Louis XV in Monaco.

6. Since 2008, the Arts District has grown with new restaurants and dining options and, not surprisingly, the competition for restaurants in Los Angeles has increased dramatically. In this highly competitive restaurant business, it is necessary for the Debtor to maintain its specially trained and knowledgeable staff, including chefs, hosts, support staff, sommeliers and bartenders, and servers who know the food and drink offerings and can deliver high quality service. The Debtor must be able to pay employee wages and honor accrued vacation and benefits in the ordinary course of business, or the staff will almost certainly leave and find employment elsewhere. Moreover, even if the Debtor is able to replace any staff that leave, the turnover will almost assuredly have an impact on the service and quality associated with the Debtor's offerings, and, in the modern day of social media, customers dissatisfied with the service and quality can post harmful reviews that may cause additional damage to the Debtor.

7. As of the Petition Date, the Debtor employs 40 individuals as follows:
- 32 hourly, non-insider employees;
- 6 salaried, non-insider employees; and
- 2 salaried, insiders. I am one of these salaried insiders with an annual salary of $95,000. The other is Tony Esnault, who has an annual salary of $95,000.

All of these employees are still employed.  Their skills and knowledge of the restaurant make them critical to the continued operations of Debtor.

8. Employee payroll is paid every two weeks by check.  The last checks were issued on July 14, 2017 for the pay period of July 26 to July 9.  The total amount of that payroll was $57,313.62 for approximately 38 employees.  I advised employees by email and by in person meetings that they needed to cash such checks; however, as of the Petition Date, approximately $45,000 of the checks had not yet cleared.  In addition, corresponding payroll taxes had not yet been debited from the payroll account.  Because many of these checks are in the process of clearing, and because payroll taxes are debited today, the Debtor requests authority to maintain the pre-petition payroll account for 48 hours post-petition so that the Debtor can avoid penalties associated with insufficient funds and failure to pay payroll taxes.  To the extent checks are honored during this period, the Debtor requests authority to re-issue checks in the same amount to such employees post-petition.  Of the approximately $45,000 in un-cahsed checks, no check is greater than $2,000 to any one employee.

9. Additionally, the Petition (July 18, 2017) occurred in the middle of the following pay period.  The total payroll pre-petition for this period is approximately $22,039.86 for 38 employees.[1]  In addition, the Debtor's employees have accrued varying amounts of pre-petition vacation and leave benefits, which the Debtor requests authorization to honor post-petition in the ordinary course of the Debtor's business.  None of the employees are owed more than $12,850.00 in pre-petition wages and benefits.  The source of fund to be used to pay and/or honor the pre-petition wages and accrued vacation and leave benefits of the employees will be the Debtor's cash.

---

[1] Of this amount, $350 represents amounts owed to two employees for expense reimbursements, and the Debtors submits that such reimbursements are necessary to maintain good will and staffing.

4

**B.    UTILITY INFORMATION**

10.    In connection with the operation of the Debtor's business, the Debtor receives water, electricity, telephone, internet, gas and similar utility services from a number of utility companies (each a "Utility Company," and collectively, the "Utility Companies"). Given the importance of the services provided by the Utility Companies to the continued operation of the Debtor's business, it is crucial that the Debtor provide adequate assurance to the Utility Companies so that there is no interruption in the services provided.

11.    Listed below are the names of the Utility Companies that are currently providing utility services to the Debtor, the type of utility services provided by the Utility Companies, the account numbers with the Utility Companies, and the amount of the cash deposit proposed to be paid to each of the Utility Companies as adequate assurance of payment:

| Utility Company | Service | Account No. | Proposed Cash Deposit |
|---|---|---|---|
| Los Angeles Department of Water & Power | Electric, Water & Sewer | 0036810000; 9926810000; 8926810000 | $6,700.00 |
| SoCalGas | Gas | 10078126348 | $480.00 |
| Tiger Natural Gas, Inc. | Gas | CA-02-06-10609 | $480.00 |
| Bel Air Internet | Phone / Internet | | $168.00 |
| **TOTAL** | | | **$7,396.00** |

12.    The proposed total amount of the cash deposits proposed to be paid is $7,396.00. The proposed deposit for each Utility Company is based on the approximate monthly average cost for utility consumption based on the historical utility costs incurred on

the utility account(s), as determined by the last six monthly invoice amounts. The source of the funds to be used to pay the proposed Cash Deposits to the Utility Companies will be the Debtor's cash on hand. The Debtor has no secured lender and therefore the Debtor's cash and the Cash Deposits are not the cash collateral of any lender.  In addition to the Cash Deposits, the Utility Companies will be kept current on all post-petition amounts payable to such Utility Companies.

**C.    STATE COURT LITIGATION**

13.    There are several reasons why the Debtor filed its Chapter 11 petition and needs to reorganize, including the need for a fresh start in an ever-increasingly competitive industry.  Additionally, on or about August 22, 2012, a class action was instituted against the Debtor for failure to pay overtime compensation in the Superior Court of California, County of Los Angeles, Case No. BC490724.  A second class action was filed on or about September 24, 2012 alleging failure to pay overtime and adding a claim for an unlawful practice of tip pooling among employees (Superior Court of California Case No. BC492661 The cases were consolidated and are set for trial on July 24, 2017. The litigation and the potential exposure for liability has been a challenge for the Debtor since the inception of the lawsuit, including by taking management's time away from the business and the costs of litigation.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed on this 19th day of July 2017, at Los Angeles California.

By: _____
Yassmin Sarmadi.