1  MATTHEW A. LESNICK (SBN 177594)
       matt@lesnickprince.com
2  CHRISTOPHER E. PRINCE (SBN 183553)
       cprince@lesnickprince.com
3  ANDREW R. CAHILL (SBN 233798)
       acahill@lesnickprince.com
4  LESNICK PRINCE & PAPPAS LLP
   185 Pier Avenue, Suite 103
5  Santa Monica, CA  90405
   Telephone:   (310) 396-0964
6  Facsimile:    (310) 396-0963

7  Counsel for Debtor and Debtor in Possession
   Church and State, LP

8

9

10              UNITED STATES BANKRUPTCY COURT

11               CENTRAL DISTRICT OF CALIFORNIA

12                  LOS ANGELES DIVISION

13

| In re | Case No. 2:17-bk-18767-BR |
|---|---|
| | Chapter 11 |
| CHURCH AND STATE, LP, | **DISCLOSURE STATEMENT DESCRIBING PLAN OF REORGANIZATION DATED SEPTEMBER 22, 2017** |
| Debtor and Debtor in Possession. | Preliminary Hearing: Date:       October 17, 2017 Time:       10:00 a.m. Place:      Courtroom 1668 Roybal Federal Building 255 E. Temple Street Los Angeles, CA 90012 |

## TABLE OF CONTENTS

I.  INTRODUCTION.................................................................................................1

   A.  Purpose of This Document ............................................................................1

   B.  Deadlines for Voting and Objecting; Date of Plan Confirmation and Hearing ..........2

      1.  Time and Place of the Confirmation Hearing .............................................2

      2.  Deadline for Voting For or Against the Plan.............................................2

      3.  Deadline for Objecting to the Confirmation of the Plan .............................3

      4.  Identity of Person to Contact for More Information Regarding the Plan..............3

   C.  Disclaimers ...................................................................................................3

   D.  Source of the Information Contained in the Disclosure Statement...........................4

   E.  The Accounting Method Used to Produce Financial Information and the Identity of
      the Accountant(s) or Others Responsible for Such Information ...............................4

II.  BACKGROUND................................................................................................4

   A.  Description and History of the Debtor's Business ....................................................4

   B.  Principals/Affiliates of Debtor's Business ................................................................5

   C.  Management of the Debtor Before and After the Bankruptcy, Including Qualification
      and Compensation ....................................................................................................5

   D.  Relationship of the Debtor With Affiliates, Subsidiaries, Merger or Acquisition
      Interests, Plan Proponents .......................................................................................6

   E.  Events Leading to Chapter 11 Filing ......................................................................6

   F.  Significant Events .....................................................................................................7

      1.  Bankruptcy Proceedings .......................................................................7

      2.  Other Legal Proceedings .......................................................................7

      3.  Description of the Available Assets and Their Value .........................................7

      4.  Actual and Projected Recovery of Preferential or Fraudulent Transfers..............8

      5.  Collectability of Accounts Receivable, Counter Claims, Etc. ............................8

      6.  Procedures Implemented to Resolve Financial Problems .................................9

      7.  Current and Historical Financial Conditions .............................................9

      8.  Anticipated Future of the Company.........................................................9

III.  SUMMARY OF THE PLAN OF REORGANIZATION ...........................................9

   A.  What Creditors and Interest Holders Will Receive Under the Proposed Plan ...........9

   B.  Unclassified Claims ................................................................................................9

      1.  Administrative Expenses.......................................................................10

      2.  Priority Tax Claims ..............................................................................10

   C.  Classified Claims and Interests ............................................................................11

      1.  Classes of Secured Claims ...................................................................11

      2.  Classes of Priority Unsecured Claims.....................................................11

3. *Classes of General Unsecured Claims* .................................................................. 11

4. *Classes of Interest Holders* ..................................................................................... 12

D. Means of Effectuating the Plan ..................................................................................... 13

1. *Funding for the Plan* ................................................................................................ 13

2. *Post-Confirmation Management* ............................................................................. 14

3. *Disbursing Agent* ..................................................................................................... 14

E. Risk Factors ................................................................................................................... 14

F. Other Provisions of the Plan ......................................................................................... 14

1. *Executory Contract and Unexpired Leases* ........................................................... 14

2. *Retention of Jurisdiction* .......................................................................................... 15

G. Tax Consequences of the Plan ...................................................................................... 16

H. Who May Vote or Object ................................................................................................ 18

1. *Who May Object to Confirmation of the Plan* ......................................................... 18

2. *Who May Vote to Accept/Reject the Plan* .............................................................. 18

3. *Who is Not Entitled to Vote* .................................................................................... 19

4. *Who Can Vote in More Than One Class* ................................................................ 19

5. *Votes Necessary to Confirm the Plan* .................................................................... 20

6. *Votes Necessary for a Class to Accept the Plan* ................................................... 20

7. *Treatment of Non-Accepting Classes* ..................................................................... 20

8. *Request for Confirmation Despite Non-Acceptance by Impaired Classes* ........... 20

I. Liquidation Analysis ....................................................................................................... 21

J. Feasibility ....................................................................................................................... 23

**IV. EFFECT OF CONFIRMATION OF PLAN ............................................................................ 23**

A. Discharge ....................................................................................................................... 23

B. Revesting of Property in the Debtor .............................................................................. 23

C. Modification of Plan ....................................................................................................... 24

D. Post-Confirmation Status Report .................................................................................. 24

E. Quarterly Fees ............................................................................................................... 24

F. Post-Confirmation Conversion/Dismissal ..................................................................... 25

G. Final Decree ................................................................................................................... 25

**V. SUPPORTING DECLARATIONS .......................................................................................... 25**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**VI. SUPPORTING EXHIBITS**..............................................................................................**26**

Exhibit A – List of All Assets

Exhibit B – Projected Income and Expenses Statements

Exhibit C – List of Administrative Expense Claims

Exhibit D – List of Unsecured Creditors

Exhibit E – List of Equity Interests

Exhibit F – Unexpired Leases and Executory Contracts to Be Assumed

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.      INTRODUCTION

On July 18, 2017 (the "Petition Date"), Church & State LP (the "Debtor") filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code.  This is the disclosure statement (the "Disclosure Statement") in the Debtor's chapter 11 case. This Disclosure Statement contains information about the Debtor and describes the Plan of Reorganization (the "Plan") filed by the Debtor on September 22, 2017. A full copy of the Plan is attached to this Disclosure Statement. Your rights may be affected. You should read the Plan and this Disclosure Statement carefully and discuss them with your attorney. If you do not have an attorney, you may wish to consult one.

### A.      Purpose of This Document

This Disclosure Statement describes:

- The Debtor and significant events during the bankruptcy case;

- How the Plan proposes to treat claims or partnership interests of the type you hold (i.e., what you will receive on your claim or partnership interest if the plan is confirmed);

- Who can vote on or object to the Plan;

- What factors the Bankruptcy Court (the "Court") will consider when deciding whether to confirm the Plan;

- Why the Debtor believes the Plan is feasible, and how the treatment of your claim or partnership interest under the Plan compares to what you would receive on your claim or partnership interest in liquidation; and

- The effect of confirmation of the Plan.

Be sure to read the Plan as well as the Disclosure Statement.  This Disclosure Statement describes the Plan, but it is the Plan itself that will, if confirmed, establish your rights.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

This Disclosure Statement cannot tell you everything about your rights. You should consider consulting your own lawyer to obtain more specific advice on how the Plan will affect you and what is the best course of action for you.

The Bankruptcy Code requires a Disclosure Statement to contain "adequate information" concerning the Plan.  The Court has approved this document as an adequate Disclosure Statement, containing enough information to enable parties affected by the Plan to make an informed judgment about the Plan.

**B.      Deadlines for Voting and Objecting; Date of Plan Confirmation and Hearing**

The Court has not yet confirmed the plan described in this Disclosure Statement.  In other words, the terms of the Plan are not yet binding on anyone. However, if the Court later confirms the Plan, then the Plan will be binding on the Debtor and on all creditors and interest holders in this case.

**1.      Time and Place of the Confirmation Hearing**

The hearing where the Court will determine whether or not to confirm the Plan will take place on _____, 2017 at __:__ __.m., in Courtroom 1668, located at 255 East Temple Street, Los Angeles, California 90012.

**2.      Deadline for Voting For or Against the Plan**

**If you are entitled to vote, it is in your best interest to timely vote by executing the enclosed ballot and returning the executed ballot to:**

Counsel for the Debtor:
Lesnick Prince & Pappas LLP
Attn: Janet Mack
315 West Ninth Street, Suite 705
Los Angeles, CA  90017
Tel:  (213) 493-6496
E-mail: jmack@lesnickprince.com

Your ballot must be actually received by _____, 2017, at ___ 5:00 p.m. **(Pacific Time)** or it will not be counted.

2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### 3.    Deadline for Objecting to the Confirmation of the Plan

Objections to the confirmation of the Plan must be filed with the Court and served upon counsel for the Debtor at the address listed above by _____, 2017.

### 4.    Identity of Person to Contact for More Information Regarding the Plan

For additional information regarding the Plan, contact Matthew A. Lesnick matt@lesnickprince.com or Christopher E. Prince of Lesnick Prince & Pappas LLP by telephone at 213.496.6496 or by email at matt@lesnickprince.com or cprince@lesnickprince.com respectively.

## C.    Disclaimers

On ____, 2017, the Bankruptcy Court entered an order approving the Disclosure Statement as containing adequate information of a kind and in sufficient detail to enable hypothetical, reasonable investors typical of the Debtor's creditors to make an informed judgment whether to accept or reject the Plan.

APPROVAL OF THE DISCLOSURE STATEMENT DOES NOT MEAN THE BANKRUPTCY COURT HAS RULED ON THE MERITS OF THE PLAN. THE BANKRUPTCY COURT HAS NOT CONFIRMED THE PLAN DESCRIBED IN THE DISCLOSURE STATEMENT, AND THE TERMS OF THE PLAN ARE NOT BINDING ON ANYONE UNTIL THE PLAN IS CONFIRMED AND THE EFFECTIVE DATE OCCURS.

THE DISCLOSURE STATEMENT SUMMARIZES THE TERMS OF THE PLAN.  IF THE PLAN AND DISCLOSURE STATEMENT ARE INCONSISTENT, THE PLAN WILL CONTROL. THE DISCLOSURE STATEMENT MAY NOT BE RELIED ON FOR ANY PURPOSE OTHER THAN TO DETERMINE WHETHER TO VOTE TO ACCEPT OR REJECT THE PLAN, AND NOTHING STATED HEREIN SHALL CONSTITUTE AN ADMISSION OF ANY FACT OR LIABILITY BY ANY PARTY, OR BE ADMISSIBLE IN ANY PROCEEDING, OR BE DEEMED CONCLUSIVE EVIDENCE OF THE TAX OR OTHER LEGAL EFFECTS OF THE PLAN ON THE DEBTOR OR

HOLDERS OF CLAIMS OR INTERESTS. CERTAIN OF THE STATEMENTS
CONTAINED IN THE DISCLOSURE STATEMENT, BY NATURE, ARE FORWARD-
LOOKING AND CONTAIN ESTIMATES AND ASSUMPTIONS. THERE CAN BE NO
ASSURANCE THAT SUCH STATEMENTS WILL REFLECT ACTUAL OUTCOMES.

**D.    Source of the Information Contained in the Disclosure Statement**

The information contained in the Disclosure Statement was provided by the Debtor's employees, attorneys and its outside bookkeeper.

**E.    The Accounting Method Used to Produce Financial Information and the Identity of the Accountant(s) or Others Responsible for Such Information**

The financial information contained in the projections attached to this Disclosure Statement were prepared on a forward-looking projected cash basis.  The financial information was prepared with the assistance of the Debtor's outside bookkeeper, Marla Cusack at RFMG, Inc., based on information provided by the Debtor's management and the Debtor's attorneys.

**II.    BACKGROUND**

**A.    Description and History of the Debtor's Business**

Church and State is a highly-reviewed French bistro located in downtown Los Angeles.  Church & State occupies the ground floor of the original NABISCO bakery and offices (built in 1925).  In 2006, the building was converted to live/work loft space, known as the Biscuit Company Lofts.  In 2007, the City of Los Angeles' Office of Historic Resources declared the building a historic cultural monument.

Church and State opened in 2008, a pioneer in the now trendy Arts District neighborhood.  Church & State has consistently offered its customers high-quality food and service for over 9 years.  Church & State has received positive reviews from numerous local and national media outlets, including the *New York Times*, the *Los Angeles Times*, *LA Weekly*, *LA Downtown News*, *Bon Appetit*, *Time Out*, and *Zagat*, among others.

**B.      Principals/Affiliates of Debtor's Business**

Yassmin Sarmadi is the General Manager of Business Operations and a shareholder in the Debtor's general partner, Big Biscuit, Inc.

Tony Esnault is the Executive Chef and a shareholder in the Debtor's general partner, Big Biscuit, Inc.

Ms. Sarmadi and Mr. Esnault are married to each other.

**C.      Management of the Debtor Before and After the
            Bankruptcy, Including Qualification and Compensation**

Yassmin Sarmadi co-founded Church & State in 2008.  Prior to opening Church & State, Ms. Sarmadi worked as a Client Relations Liaison for a private financial lender to the restaurant industry.

Mr. Esnault joined Church & Sate in 2013, having worked as the head chef at several highly-regarded restaurants in the United States and France.  At the Essex House in New York, he earned the restaurant a three-star Michelin rating.  Three stars is Michelin's highest rating, representing Michelin's view that the restaurant offers "exceptional cuisine that is worth a special journey."  Fewer than 15 restaurants in the United States have earned three Michelin stars.

Not long after Mr. Esnault took over, Church & State raised its already high profile.  In 2014, the *Los Angeles Times* food critic, Jonathon Gold, ranked Church & State number 19 on his list of the 101 best restaurants in the area.  That same year, LA Weekly named Church & State to its list of 99 essential restaurants.

Ms. Sarmadi and Mr. Esnault operate a second restaurant downtown, Spring, which serves Southern French cuisine.

Ms. Sarmadi and Mr. Esnault will retain their same positions with the reorganized debtor after the Effective Date for their pre-petition compensation of $95,000 per year each (subject to available cash flow).

### D.   Relationship of the Debtor With Affiliates, Subsidiaries, Merger or Acquisition Interests, Plan Proponents

The Debtor is a limited partnership.  The general partner, Big Biscuit, Inc., is wholly owned by the Debtor's principals, Ms. Sarmadi and Mr. Esnault.  The Debtor is the Plan proponent.

### E.   Events Leading to Chapter 11 Filing

The restaurant industry in downtown Los Angeles is significantly more competitive in 2017 than it was when Church & State opened in 2008.  In the Arts District neighborhood alone, dozens of new restaurants have opened in the past several years.

Despite all the new competition, Church & State has kept a core loyal clientele, and revenues have dropped only slightly over the years.  Indeed, day-to-day operation of the restaurant did not lead to Church & State's bankruptcy.  Rather, the company filed for bankruptcy because it could not afford the cost – in both money and management time – to defend wage and hour class actions filed against the company in 2012.

In August 2012, a former employee filed a proposed class action against the company for alleged failure to pay overtime compensation (LA Superior Court Case No. BC490724).   A second proposed class action was filed the following month, also alleging failure to pay overtime and adding a claim for alleged improper tip pooling (LA Superior Court Case No. BC492661).  After almost 5 years of litigation, the cases were set for trial on July 24, 2017.  Repeated efforts to settle the cases were unsuccessful.

Litigation costs consumed the company's profits, and the company lacked cash to refresh the restaurant to keep up with the increased competition in the area. Eventually the litigation costs grew beyond the company's profits entirely.  Unable to defend the litigation, unable to reach a settlement, and unable to satisfy any significant adverse judgment in any event, the company filed for bankruptcy to reorganize and obtain a fresh start.

**F.     Significant Events**

**1.     Bankruptcy Proceedings**

Church & State filed for chapter 11 bankruptcy protection on July 18, 2017. The Debtor filed two "first day" motions on July 19, 2017 – a motion for authorization to pay pre-petition priority wage claims and a motion to establish adequate assurance of future payments to utility companies.  Both motions were granted by orders dated July 27, 2017.

On July 26, 2017, the Bankruptcy Court set deadlines for the Debtor to file a proposed plan and disclosure statement.

On July 31, 2017, the Debtor filed an application to employ Lesnick Prince & Pappas LLP as counsel.  The Bankruptcy Court authorized the employment by order dated August 23, 2017.

No official committee of unsecured creditors has been appointed.  No trustee has been appointed, and the Debtor continues to operate its business as a debtor in possession.

The Debtor does not have any secured creditors and, therefore, has not needed consent to use cash collateral.

**2.     Other Legal Proceedings**

The wage and hour class action litigation cases described above are still pending in the Los Angeles Superior Court, but have been stayed because of the bankruptcy case.

**3.     Description of the Available Assets and Their Value**

Because Church & State opened at the beginning of the downtown renaissance, its lease is currently somewhat below current market rates.  The original written lease states it expires in March 2018 (as indicated in the Debtor's Bankruptcy Schedule G).  The Debtor and its landlord, 673 Mateo, LLC (the "Landlord") both understand that the lease was previously extended through March 2019.  The time

remaining on the lease has value to the Debtor.  However, the Debtor cannot pay its pre-petition rent arrearage out of cash on hand.  Accordingly, it cannot assume the lease without the Landlord's consent to defer payment of back rent.

The Debtor cannot raise the cash to pay the back rent through an asset sale because the remaining lease term is too short to permit marketing and sale of the restaurant.  Even under a highly abbreviated timeline (90 days to market and 90 days to close), a sale would take place less than one year before the end of the lease.  The Debtor believes that no buyer will pay going concern value for a restaurant that will operate for only 9 months.

Aside from the below-market lease and the potential for a lease extension, the Debtor's only valuable assets are a liquor license, some fixtures and equipment, and liquor inventory.

### 4.     Actual and Projected Recovery of Preferential or Fraudulent Transfers

The Debtor does not currently intend to pursue any avoidance claims.  The Debtor has reviewed payments to creditors during the applicable preference periods and believes that any actions to avoid potentially preferential transfers would not be cost effective.  The Debtor is not aware of any potential fraudulent transfer claims.  Nonetheless, under the Plan, the Debtor retains the right to pursue avoidance actions and will pursue any such claims if it determines that it would be in the best interest of the estate.

### 5.     Collectability of Accounts Receivable, Counter Claims, Etc.

As a restaurant, the Debtor has very few aging accounts receivable to collect because nearly all sales are paid for at the time of sale.  Credit card payments are processed and paid within a matter of days.

### 6.    Procedures Implemented to Resolve Financial Problems

The primary cause of the Debtor's financial problems was the class action litigation.  Those claims will be discharged in the bankruptcy and the cost of further defense will be eliminated.  At the outset of the employment litigation 5 years ago, the Debtor worked with outside employment counsel to implement procedures to avoid further wage and hours claims.

### 7.    Current and Historical Financial Conditions

The restaurant industry in downtown Los Angeles is significantly more competitive in 2017 than it was when Church & State opened in 2008.  In the Arts District neighborhood alone, dozens of new restaurants have opened in the past several years.

Despite all the new competition, Church & State has kept a core loyal clientele, and revenues have dropped only slightly over the years.

During the bankruptcy case, the Debtor has been filing its Monthly Operating Reports in a timely manner, which show the Debtor's current financial performance on a cash basis in detail.

### 8.    Anticipated Future of the Company

The Debtor's management will attempt to raise capital to pay the Landlord Claim, negotiate a lease extension and invest in a "refresh" of the restaurant.  If that cannot be achieved, the Debtor will operate to the end of its lease term (March 2019) and liquidate.

## III.    SUMMARY OF THE PLAN OF REORGANIZATION

### A.    What Creditors and Interest Holders Will Receive Under the Proposed Plan

The proposed treatment of creditors and interest holders under the Plan is set forth below.

### B.    Unclassified Claims

Certain types of claims are not placed into voting classes; instead they are unclassified.  They are not considered impaired, and they do not vote on the Plan

because they are automatically entitled to a specific treatment provided for them in the Bankruptcy Code.  As such, the Debtor has not placed the following claims in a class, and the treatment of these claims is described below.

### 1.    Administrative Expenses

Administrative Claims are claims for costs or expenses of administering the Debtor's Chapter 11 Case which are allowed under Bankruptcy Code § 507(a)(2).  The Bankruptcy Code requires that all administrative claims be paid on the Effective Date of the Plan, unless the claimant agrees to a different treatment.  Section 507(a)(2) Administrative Claims include, but are not limited to, allowed claims of professionals for fees and costs incurred in connection with the administration of the bankruptcy case, and the costs and the statutory fees of the Bankruptcy Court and the Office of the United States Trustee.

Subject to additional requirements for professionals and certain other entities set forth below, the Reorganized Debtor shall pay to each Holder of an Administrative Claim Cash equal to the Allowed amount of such Administrative Claim on the Effective Date or as soon as practicable thereafter, unless the Holder agrees or shall have agreed to other treatment. Payment on an Administrative Claim which arose in the ordinary course of the Debtor's business, will be made when such payment comes due in the ordinary course of the Debtor's business.  Exhibit C contains a list of the Debtor's estimated unpaid administrative claims on the Effective Date, other than those administrative expenses arising in the Debtor's ordinary course of business, and the proposed treatment of such claims.

### 2.    Priority Tax Claims

Priority Tax Claims are certain unsecured income, employment and other taxes described by Bankruptcy Code § 507(a)(8). The Bankruptcy Code requires that each holder of such a § 507(a)(8) priority Tax Claim receive the present value of such

claim in deferred cash payments, over a period not exceeding five years after the Petition

Date.  Allowed Priority Tax Claims will be paid in full on the Effective Date.

### C.   Classified Claims and Interests

#### 1.   Classes of Secured Claims

Not applicable.  There are no members of this class.  The Debtor has no

secured creditors.

#### 2.   Classes of Priority Unsecured Claims

This Class includes claims for an amount entitled to priority under Sections

507(a)(4), 507(a)(5), 507(a)(6) or 507(a)(7) of the Bankruptcy Code, and does not include

Administrative Claims or Priority Tax Claims. These are for unsecured Claims for accrued

employee compensation earned within 180 days prior to the Petition Date up to the

current statutory maximum priority.  Holders of these Claims will be paid in full on the

Effective Date except to the extent such Claim includes accrued vacation or sick pay and

the Holder remains employed with the Reorganized Debtor after the Effective Date. If so,

the vacation or sick pay shall be reinstated and the Holder shall be authorized to use

such amounts for vacation or sick time following the Effective Date.  This class is not

impaired, deemed to have accepted the Plan, and, therefore, not entitled to vote.

#### 3.   Classes of General Unsecured Claims

##### a.   Class 3(a) – General Unsecured Claims

Each holder of an allowed general unsecured Claim will receive its

proportionate share of $10,000, after satisfaction of any allowed unpaid priority claims,

when the amount of all such claims has been established.  If the Reorganized Debtor

negotiates an extension of its lease and obtains sufficient capital to continue in business

beyond the date of its existing lease term (as described above), each holder of an

allowed general unsecured Claim will receive its proportionate share of an additional

$10,000, after satisfaction of any allowed unpaid priority claims.  If the Reorganized

Debtor liquidates, holders of allowed general unsecured claims will receive the net

proceeds of the liquidation to the extent such proceeds exceed the amount necessary to pay Administrative Claims, priority claims, and the Landlord Claim.  This class is impaired and entitled to vote.

### b.    Class 3(b) – Landlord Claim

673 Mateo, LLC (the "Landlord") holds a general unsecured claim for unpaid pre-petition rent under the Lease for the Debtor's main premises (as described above). The Landlord Claim and the Lease shall be treated as follows:

The Landlord shall permit the Reorganized Debtor to remain in possession of the premises under the same terms as the existing Lease, so long as the Reorganized Debtor remains current in its post-petition obligations under the Lease.

If the Reorganized Debtor negotiates an extension of the Lease and obtains sufficient capital to continue in business beyond the date of its existing lease term, the holder of the Landlord Claim will be paid in full on or before the end of the existing lease. If the Reorganized Debtor liquidates, the holder of the Landlord Claim will receive the net proceeds of the liquidation to the extent such proceeds exceed the amount necessary to pay Administrative Claims.  This class is impaired and entitled to vote.

### 4.    Classes of Interest Holders

Existing interests will be deemed cancelled as of the Effective Date. Current holders of interests may collectively contribute $10,000 of new capital to the Reorganized Debtor, to be used for distribution to unsecured creditors under the Plan, in exchange for new interests in the Reorganized Debtor.  Contributions must be made no less than 3 days prior to the Effective Date, or such other time as the Debtor may agree. Holders of current interests may contribute in proportion to their existing interests.  The Debtor's two largest interest holders (Yassmin Sarmadi and Tony Esnault) will "backstop" the contribution, i.e., if any existing interest holders decline to contribute, Ms. Sarmadi and Mr. Esnault will make those contributions and receive the corresponding new

interests.  This class is impaired and deemed to have rejected the Plan and, therefore, not entitled to vote.

### D.    Means of Effectuating the Plan

The Debtor's ownership and management feels that closure of the restaurant before the end of the lease would be a tragedy.  A popular, highly-regarded local institution would be shuttered, and close to 40 employees would lose their jobs.

The Debtor's owners will pay $10,000 for the equity in the restaurant subject to the following obligations: (1) unpaid administrative expenses; (2) the Landlord's cure amount; and (3) an additional $10,000 for distribution to general unsecured creditors. The initial $10,000 payment will be distributed to holders of allowed unsecured claims.

If the Reorganized Debtor can negotiate a lease extension and raise additional capital, the Reorganized Debtor will pay all unpaid administrative expenses, the Landlord's lease cure amount and an additional $10,000 to general unsecured creditors. If the Debtor cannot negotiate a lease extension and/or cannot raise the necessary capital to make these payments, the reorganized debtor will operate the restaurant until the end of the lease term, liquidate its assets and distribute the proceeds to administrative claimants, the Landlord, and general unsecured creditors in order of priority.

The Debtor believes the Landlord will negotiate a lease extension to facilitate a sale and, accordingly, will agree to defer payment of its cure amount until the restaurant is either sold (or liquidated).  This will allow the restaurant to stay open long enough to negotiate a lease extension and for the reorganized debtor to raise additional capital to make the required payments.

### 1.    Funding for the Plan

The Debtor will raise the $10,000 from existing ownership in proportion to their interest in the Debtor.  The Debtor's two largest interest holders (Yassmin Sarmadi and Tony Esnault) will "backstop" the contribution, i.e., if any existing interest holders choose not to contribute, Ms. Sarmadi and Mr. Esnault will make those contributions.

13

Existing interests will be cancelled and new interests will be issued to interest holders who have contributed in proportion to the contribution.

### 2.    Post-Confirmation Management

The Management will remain unchanged post-confirmation.

### 3.    Disbursing Agent

The Disbursing Agent shall be the Debtor, who shall serve without bond or compensation but shall be entitled to reimbursement of reasonable expenses by applying to the court no more frequently than once every three months.

### E.    Risk Factors

The Debtor's plan contemplates a $10,000 payment from the Debtor's management for the initial distribution to general unsecured creditors.  If the Debtor's management fails to make the payment, the plan will fail and the company will be forced to liquidate.

To make the second $10,000 distribution to general unsecured creditors and to make the full cure payment to the landlord, the Debtor's management must raise additional capital and negotiate a lease extension.  If the Debtor's management cannot raise sufficient capital and/or cannot negotiate a lease extension, the company's assets will be liquidated with no additional distribution to general unsecured creditors.

### F.    Other Provisions of the Plan

### 1.    Executory Contract and Unexpired Leases

### a.    Assumptions

On the Effective Date, the Debtor intends to assume the following executory contracts and leases:

- None

14

### b.    Rejections

On the Effective Date, the Debtor intends to reject the following executory contracts and leases:

- Management agreement with Big Biscuit, Inc.

The Debtor is not aware of any other executory contracts or unexpired leases.  However, the Debtor reserves the right to reject any executory contract or unexpired lease on or before confirmation of the Plan.  Any executory contract or unexpired lease not expressly assumed by Order of the Bankruptcy Court or through the Plan shall be deemed rejected on the Effective Date.

### c.    Other Treatment

On the Effective Date, the Debtor intends to treat the following executory contracts and leases in a way other than assumption or rejection:

- Real property lease for Debtor's restaurant (the "Lease"):
  Location:
  850 Industrial Street, #100
  Los Angeles, California 90021

  Lessor:
  673 Mateo, LLC
  1855 Industrial Street, #106
  Los Angeles, California 90021.

  The Lease shall be treated as provided in the treatment of the Class 4(b) – Landlord Claim, described in Section III(C)(3)(b), above.

### 2.    Retention of Jurisdiction

After confirmation, the court retains and may exercise jurisdiction over proceedings concerning:  (1) whether Debtor is in material default under this Plan, (2) whether the time for performing any Plan obligation should be extended, (3) adversary proceedings and contested matters pending as of the Effective Date or specifically contemplated in this Plan or in the Disclosure Statement to be filed with the court, (4) whether the case should be dismissed or converted to one under chapter 7, (5) any proceedings to allow or disallow claims or administrative expenses (the court will not

1   review professional fees incurred after the Effective Date, unless otherwise stated in

2   attached exhibits to the Plan or Disclosure Statement), (6) settlements or compromises

3   under Rule 9019, (7) any proceedings under §§ 110, 329, or 362, or regarding sanctions,

4   and (8) any other proceedings, whether or not commenced or contemplated as of the

5   Effective Date, regarding the implementation, interpretation, or enforcement of this Plan

6   or the administration of the bankruptcy case or estate.

7           **G.    Tax Consequences of the Plan**

8           The following discussion summarizes certain federal income tax

9   consequences of the Plan to the Debtor.  This summary does not address the federal

10  income tax consequences to creditors or interest holders.  This summary does not address

11  foreign, state or local income tax consequences, estate or gift tax consequences of the

12  Plan.

            This summary is based on the Internal Revenue Code of 1986, as

13  amended (the "IRC"), the Treasury Regulations promulgated and proposed thereunder

14  (the "Regulations"), judicial decisions, and published administrative rulings and

15  pronouncements of the Internal Revenue Service (the "IRS") currently in effect.  These

16  authorities are all subject to change, possibly with retroactive effect, and any such

17  change could alter or modify the federal income tax consequences described below.

18          The Debtor has not employed any tax attorneys or other tax professionals

19  to analyze the tax consequences of the Plan, and the Debtor's bankruptcy counsel do

20  not provide tax advice.  Accordingly, the tax consequences to the Debtor are presently

21  unknown.

22          The IRC provides that a debtor in a chapter 11 bankruptcy case must

23  reduce certain of its tax attributes by the amount of any cancellation of indebtedness

24  ("COD") income that is realized as a result of the bankruptcy plan, instead of recognizing

25  the income.  COD income is the excess of the amount of a taxpayer's indebtedness that

26  is discharged over the amount or value of the consideration exchanged therefor.

27

28

Payments of interest, dividends, and certain other payments are generally subject to withholding unless the payee of such payment furnishes such payee's correct taxpayer identification number (social security number or employer identification number) to the payor.  The Debtor may be required to withhold the applicable percentage of any payments made to a holder who does not provide its taxpayer identification number.  Backup withholding is not an additional tax, but an advance payment that may be refunded to the extent it results in an overpayment of tax.

THE TAX CONSEQUENCES TO CREDITORS OR INTEREST HOLDERS MAY VARY BASED UPON THE INDIVIDUAL CIRCUMSTANCES OF EACH SUCH HOLDER.  CREDITORS MAY RECOGNIZE INCOME OR LOSS AS A RESULT OF THE PLAN.  THIS DISCUSSION DOES NOT CONSTITUTE TAX ADVICE OR A TAX OPINION CONCERNING THE MATTERS DESCRIBED.  THERE CAN BE NO ASSURANCE THAT THE INTERNAL REVENUE SERVICE WILL NOT CHALLENGE ANY OR ALL OF THE TAX CONSEQUENCES DESCRIBED HEREIN, OR THAT SUCH A CHALLENGE, IF ASSERTED, WOULD NOT BE SUSTAINED.  ACCORDINGLY, EACH CREDITOR IS STRONGLY URGED TO CONSULT WITH ITS OWN TAX ADVISOR REGARDING THE FEDERAL, STATE, LOCAL, FOREIGN OR OTHER TAX CONSEQUENCES OF THE PLAN.

THE FOREGOING IS INTENDED TO BE ONLY A SUMMARY OF CERTAIN UNITED STATES FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN, AND IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING WITH A TAX PROFESSIONAL.  THE FEDERAL, STATE AND LOCAL INCOME AND OTHER TAX CONSEQUENCES OF THE PLAN ARE COMPLEX AND, IN SOME CASES, UNCERTAIN.  SUCH CONSEQUENCES MAY ALSO VARY BASED ON THE INDIVIDUAL CIRCUMSTANCES OF EACH CREDITOR OR INTEREST HOLDER. ACCORDINGLY, EACH CREDITOR IS STRONGLY URGED TO CONSULT WITH HIS, HER OR ITS OWN TAX ADVISOR REGARDING THE FEDERAL, STATE AND LOCAL

INCOME AND OTHER TAX CONSEQUENCES UNDER THE PLAN.CONFIRMATION

REQUIREMENTS AND PROCEDURES

**H.    Who May Vote or Object**

**1.    Who May Object to Confirmation of the Plan**

Even if you are not entitled to vote, you can object to confirmation of the

Plan if you believe that the requirements for confirmation are not met (and if you are a

party in interest in this bankruptcy case).  For the deadlines and procedures, see the

enclosed order or court-approved notice.

**2.    Who May Vote to Accept/Reject the Plan**

You are entitled to vote on the Plan unless: (1) your claim or interest is

disputed; (2) your class is to receive no distribution (presumed to reject the Plan); (3) your

class is "unimpaired" (presumed to accept the Plan); or (4) your claim is unclassified (and

thus is required by law to be paid in full).

**a.    What Is an Allowed Claim/Interest**

An Allowed Claim or Interest is a Claim or Interest (1) for which a proof of

the Claim or Interest was timely filed and no objection to the Claim or Interest was filed; or

(2) is deemed filed under applicable law (e.g., filed on the Schedules as noncontingent,

nondisputed and liquidated); or (3) is Allowed by order of the Bankruptcy Court; or (4) is

Allowed under the Plan.

The general claims bar date was _____, 2017.  A creditor or

interest holder may have an allowed claim or interest even if a proof of claim or interest

was not timely filed.  A claim is deemed allowed if (1) it is scheduled on the Debtor's

Schedules and such claim is not scheduled as disputed, contingent, or unliquidated, and

(2) no party in interest has objected to the scheduled claim.  An interest is deemed

allowed if it is scheduled and no party in interest has objected to the interest.  Consult the

Debtor's Schedules to see how the Debtor has characterized your claim or interest.

Additional information is provided in Exhibit D.

### b.    What Is an Impaired Claim/Interest

As noted above, an allowed claim or interest only has the right to vote if it is in a class that is impaired under the Plan.  A class is impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.  For example, a class comprised of general unsecured claims is impaired if the Plan fails to pay the members of that class 100% of what they are owed.

### 3.    Who is Not Entitled to Vote

The following **four** types of claims are *not* entitled to vote: (1) claims that have been disallowed or claims as to which there is a pending objection that have not been provisionally allowed for voting purposes; (2) claims in unimpaired classes; (3) claims entitled to priority pursuant to Bankruptcy Code Sections 507(a)(2), (a)(3), and (a)(8); and (4) claims in classes that do not receive or retain any value under the Plan. Claims in unimpaired classes are not entitled to vote because such classes are deemed to have accepted the Plan.  Claims entitled to priority pursuant to Bankruptcy Code Sections 507(a)(2), (a)(3), and (a)(8) are not entitled to vote because such claims are not placed in classes and they are required to receive certain treatment specified by the Bankruptcy Code.  Claims in classes that do not receive or retain any value under the Plan do not vote because such classes are deemed to have rejected the Plan.

EVEN IF YOUR CLAIM IS OF THE TYPE DESCRIBED ABOVE, YOU MAY STILL HAVE A RIGHT TO OBJECT TO THE CONFIRMATION OF THE PLAN.

### 4.    Who Can Vote in More Than One Class

If your claim has been allowed in part as a secured claim and in part as an unsecured claim, or if you otherwise hold claims or interests in more than one class, you are entitled to accept or reject the Plan in each capacity and you should return one ballot for each claim or interest.

### 5.    Votes Necessary to Confirm the Plan

The Plan will be confirmed if (1) it is accepted by each impaired class, or (2) it is accepted by at least one impaired class (without counting the votes of "insiders," as defined in § 101(31)) and the court determines that the Plan is "fair and equitable" (as defined by § 1129(b)) to all rejecting classes of creditors, and (3) it meets all of the other legal requirements for confirmation.

### 6.    Votes Necessary for a Class to Accept the Plan

A class of creditors accepts the Plan if a majority in number and at least two-thirds in dollar amount of the claims in that class are timely voted in favor of the Plan (§ 1126(c)).  A class of interests accepts the Plan if at least two-thirds of those interests are timely voted in favor of the Plan (§ 1126(d)).

### 7.    Treatment of Non-Accepting Classes

As noted above, even if all impaired classes do not accept the Plan, the Court may nonetheless confirm the Plan if the nonaccepting classes are treated in the manner required by the Bankruptcy Code.  The process by which nonaccepting classes are forced to be bound by the terms of the Plan is commonly referred to as "cramdown." The Bankruptcy Code allows the Plan to be "crammed down" on nonaccepting classes of claims or interests if it meets all consensual requirements except the voting requirements of Section 1129(a)(8) and if the Plan does not "discriminate unfairly" and is "fair and equitable" toward each impaired class that has not voted to accept the Plan as referred to in 11 U.S.C. § 1129(b) and applicable case law.

### 8.    Request for Confirmation Despite Non-Acceptance by Impaired Classes

Section 1129(b) provides that a Plan can be confirmed even if it has not been accepted by all impaired Classes if at least one impaired Class of Claims has accepted it.  If applicable, the Bankruptcy Court may confirm the Plan as long as it does

not "discriminate unfairly" and is "fair and equitable" as to each impaired Class that has not accepted it.

A Plan of reorganization does not "discriminate unfairly" with respect to a nonaccepting Class if the value of the cash and/or securities to be distributed to the nonaccepting Class is equal to, or otherwise fair when compared to, the value of the distributions to other Classes whose legal rights are the same as those of the nonaccepting Class or is otherwise permitted under the circumstances.

The Bankruptcy Code provides a non-exclusive definition of the phrase "fair and equitable" as follows:

Unsecured Creditors. Either: (i) each impaired unsecured creditor receives or retains under property of a value equal to the amount of its allowed Claim; or (ii) the Holders of Claims and interests that are junior to the Claims of the dissenting Class will not receive any property.

Interests

Either: (i) each holder of an Interests will receive or retain under the Plan property of a value equal to the greater of the fixed liquidation preference to which such holder is entitled, or the fixed redemption price to which such holder is entitled or the value of the interest; or

(ii) the holder of an interest that is junior to the nonaccepting Class will not receive or retain any property under the Plan.

**I.    Liquidation Analysis**

Under Bankruptcy Code Section 1129(a)(7), a chapter 11 plan of reorganization must give each holder of a claim or interest who does not vote to accept the plan as much as the holder would receive or retain if the debtor was liquidated under chapter 7.  This requirement is known as the "best interests of creditors test."  To show that the Plan satisfies the best interests of creditors test, the Debtor has prepared the following liquidation analysis.

The costs and proceeds of a hypothetical chapter 7 liquidation are, by definition, only estimates.  This liquidation analysis was prepared to generate a reasonable good-faith estimate for purposes of plan confirmation. The analysis is not intended and should not be used for any other purpose. The underlying financial information in the Liquidation Analysis was not compiled or examined by any independent accountants.  No independent appraisals were conducted in preparing the Liquidation Analysis.

| | Estimated Chapter 7 Liquidation Value[1] |
|---|---|
| **Assets:** | |
| Real Property | $0 |
| Liquor License | $60,000 |
| Liquor Inventory[2] | $10,000 |
| Other Inventory | $0 |
| Furniture, Fixtures & Equipment | $5,000 |
| Cash | $10,000 |
| **Gross Proceeds** | **$85,000** |
| | |
| **Chapter 7 Liabilities:** | |
| Wind-down Costs[3] | ($15,000) |
| Trustee Fees[4] | ($7,500) |
| Ch. 7 Professional Fees | ($25,000) |
| Ch. 11 Administrative Claims | ($75,000) |
| **Total Chapter 7 Liabilities:** | **$122,500** |
| | |
| **Funds Available to Pay Unsecured Creditors in a Chapter 7:** | **$0** |
| | |
| **Percent Distribution to Unsecured Creditors in Chapter 7:** | **0%** |

_____

[1] All values are given net of sale costs, such as taxes and commissions, but excluding administrative costs such as professional fees.

[2] The liquidation analysis assumes that the Trustee would liquidate the liquor inventory and abandon all other inventory.

[3] The liquidation analysis assumes that the Trustee would retain the existing location for 60 days and would then reject the lease, and that the Trustee would retain one or two employees for a brief period to assist with identifying and securing valuable assets.

[4] Calculated as follows: pursuant to 11 U.S.C. § 326(a) – assuming $85,000 in distributions – 25% of the first $5,000 in distributions ($1,250) and 10% of the next $45,000 in distributions ($4,500), and 5% of the next $35,000 ($1,750) for a total of $4,781.21

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### J.    Feasibility

The Plan cannot be confirmed unless the court finds it feasible.  A Plan is feasible if confirmation of the Plan is not likely to be followed by Debtor's liquidation or need for further financial reorganization, unless such liquidation or reorganization is proposed in the Plan (§ 1129(a)(11)).  The Debtor believes the Plan is feasible because (1) the distributions contemplated by the Plan are funded by equity infusions, (2) the profitability of the Debtor's business operations through the end of the Lease is not relevant to Debtor's obligations under the Plan, and (3) the Plan contemplates a liquidation if the Debtor is unable to continue to operate at any time after the Effective Date.

### IV.    EFFECT OF CONFIRMATION OF PLAN

### A.    Discharge

Debtor shall receive a discharge of debts to the extent and at the time provided in § 1141(d), whether or not a party in interest has filed a proof of claim or interest, or accepts this Plan, unless the court orders otherwise.

The automatic stay is lifted upon confirmation as to property of the bankruptcy estate.  However, the stay continues to prohibit collection or enforcement of pre-petition claims against the Reorganized Debtor or the Reorganized Debtor's property until the earlier of the date: (1) the bankruptcy Case is closed, or (2) the bankruptcy Case is dismissed.  Therefore, all parties bound by the Plan shall take no action with respect to, and are enjoined from, collecting or enforcing their pre-petition claims against the Reorganized Debtor as set forth herein, and as otherwise provided by operation of law, until the earlier of the date: (1) the bankruptcy Case is closed, or (2) the bankruptcy Case is dismissed.

### B.    Revesting of Property in the Debtor

On the Effective Date, all property of the bankruptcy estate will vest in the reorganized Debtor pursuant to § 1141(b) & (c), free and clear of all claims and interests except as otherwise provided in this Plan.

In addition, on the Effective Date, all of the claims against and/or interests in third parties that constitute property of the estate shall be revested in the Reorganized Debtor.  Following the Effective Date, the Reorganized Debtor shall have absolute authority to prosecute, waive, adjust or settle any claims without the need for approval by the Court.  Following the Effective Date, the Reorganized Debtor shall have the authority to employ such professionals as it deems necessary to prosecute or defend such claims asserted without the need for Court approval.

### C.    Modification of Plan

The Debtor may modify this Plan at any time before confirmation, subject to § 1127 and Rule 3019(a), but in that event the court may require a new disclosure statement and/or revoting on the Plan.  The Debtor or the reorganized Debtor also may seek to modify this Plan at any time after confirmation (1) if this Plan has not been substantially consummated and (2) if the court authorizes the proposed modifications after notice and a hearing (§ 1127(b)).  In addition, if Debtor is an individual then Debtor or other persons may seek to modify this Plan after confirmation pursuant to § 1127(e).

### D.    Post-Confirmation Status Report

As long as this case is not closed, the reorganized Debtor must file status reports every 120 days explaining what progress has been made toward substantial consummation of the confirmed Plan.  The status report must be served on the United States Trustee, the official creditors' committee (or, if none, then the twenty largest general unsecured creditors), and those parties who have requested special notice.

### E.    Quarterly Fees

Quarterly fees accruing under 28 U.S.C. § 1930(a)(6) after confirmation shall be paid to the United States Trustee in accordance with that statute until entry of a final decree, or entry of an order of dismissal or conversion to chapter 7.

### F.    Post-Confirmation Conversion/Dismissal

A creditor or party in interest may bring a motion to convert or dismiss the Case under 11 U.S.C. § 1112(b) after the Plan is confirmed if there is a default in performing the Plan.  If the Court orders the Case converted to chapter 7 after the Plan is confirmed, then all property that had been property of the chapter 11 estate, and that has not been disbursed pursuant to the Plan, will revest in the chapter 7 estate.

The order confirming the Plan may also be revoked under very limited circumstances. The Court may revoke the order if the order of confirmation was procured by fraud and if the party in interest brings an adversary proceeding to revoke confirmation within 180 days after the entry of the order of confirmation.

### G.    Final Decree

As soon as practicable under Rule 3022, the reorganized Debtor shall file a motion with the court to obtain a final decree to close this bankruptcy case, unless good cause is shown to keep this case open.

## V.    SUPPORTING DECLARATIONS

In support of this Disclosure Statement, attached is the Declaration of Yassmin Sarmadi, the General Manager of Business Operations for the Debtor.

## VI.    SUPPORTING EXHIBITS

In support of this Disclosure Statement, the following Exhibits are attached:

- Exhibit A – List of All Assets

- Exhibit B – Projected Income and Expenses Statements

- Exhibit C – List of Administrative Expense Claims

- Exhibit D – List of Unsecured Creditors

- Exhibit E – List of Equity Interests

- Exhibit F – Unexpired Leases and Executory Contracts to be Assumed

Dated: September 22, 2017

CHURCH AND STATE, L.P.
DEBTOR IN POSSESSION


By:_____
    Yassmin Sarmadi
    General Manager of Business Operations

PRESENTED BY:

Dated: September 22, 2017


LESNICK PRINCE & PAPPAS LLP



By:____/s/ Matthew A. Lesnick_____
        Matthew A. Lesnick
    Counsel for Debtor and Debtor in
            Possession

26

### DECLARATION OF YASSMIN SARMADI

I, Yassmin Sarmadi, hereby declare as follows:

1.      I am over 18 years of age.  I have personal knowledge of the facts set forth in this declaration, and, if called as a witness, could and would testify competently with respect to those facts.

2.      I make this declaration in support of the Disclosure Statement to which this Declaration is attached.  Unless otherwise stated, all capitalized terms have the same meanings as in the Disclosure Statement.  I have reviewed the Disclosure Statement and exhibits and believe them to be accurate to the best of my knowledge.

3.      Attached as Exhibit A is a true and correct copy of the Debtor's Bankruptcy Schedule A/B, as amended on September 22, 2017, which contains a list of all of the Debtor's assets with the Debtor's best estimate of the fair market value of each asset or category of assets.

4.      Attached as Exhibit B is a spreadsheet containing the Debtor's projected income and expenses over the life of the proposed Plan (from January 2018 through March 2019).  The spreadsheet was prepared by the Debtor's outside bookkeeper, Marla Cusack of RFMG, Inc., based on information supplied by the Debtor. I have reviewed the projections and believe them to be accurate and reasonable, with the caveat that they are projections of future performance, not guarantees.

5.      Attached as Exhibit C is a true and correct list of the Debtor's estimated administrative expense claims as of the Effective Date of the Plan.

6.      Attached as Exhibit D is a true and correct list of the Debtor's unsecured creditors, which is based on a combination of the Debtor's books and records and proofs of claim filed by creditors thus far in the bankruptcy case.

7.      Attached as Exhibit E is a true and correct list of the Debtor's equity interest holders.

1           8.     Attached as Exhibit F is a description of the proposed treatment of

2    the Debtor's unexpired leases and executory contracts.

3           I declare under penalty of perjury that the foregoing is true and correct to

4    the best of my knowledge and that this declaration was executed on September __, 2017

5    at Los Angeles, California.

6

7                                 _____

                                    Yassmin Sarmadi

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Exhibit A
List of All Assets**

**Fill in this information to identify the case:**

Debtor name _____

United States Bankruptcy Court for the:_____ District of _____
(State)

Case number (If known): _____

☐ Check if this is an
amended filing

Official Form 206A/B

# Schedule A/B: Assets — Real and Personal Property

**12/15**

Disclose all property, real and personal, which the debtor owns or in which the debtor has any other legal, equitable, or future interest. Include all property in which the debtor holds rights and powers exercisable for the debtor's own benefit. Also include assets and properties which have no book value, such as fully depreciated assets or assets that were not capitalized. In Schedule A/B, list any executory contracts or unexpired leases. Also list them on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G).

Be as complete and accurate as possible. If more space is needed, attach a separate sheet to this form. At the top of any pages added, write the debtor's name and case number (if known). Also identify the form and line number to which the additional information applies. If an additional sheet is attached, include the amounts from the attachment in the total for the pertinent part.

For Part 1 through Part 11, list each asset under the appropriate category or attach separate supporting schedules, such as a fixed asset schedule or depreciation schedule, that gives the details for each asset in a particular category. List each asset only once. In valuing the debtor's interest, do not deduct the value of secured claims. See the instructions to understand the terms used in this form.

## Part 1:    Cash and cash equivalents

1.  **Does the debtor have any cash or cash equivalents?**

☐ No. Go to Part 2.
☐ Yes. Fill in the information below.

| All cash or cash equivalents owned or controlled by the debtor | Current value of debtor's interest |
|---|---|

2.  **Cash on hand**                                                                                                    $_____

3.  **Checking, savings, money market, or financial brokerage accounts** *(Identify all)*

Name of institution (bank or brokerage firm)          Type of account          Last 4 digits of account number
3.1. _____    _____    ____ ____ ____ ____    $_____
3.2. _____    _____    ____ ____ ____ ____    $_____

4.  **Other cash equivalents** *(Identify all)*

4.1. _____    $_____
4.2. _____    $_____

5.  **Total of Part 1**                                                                                              $_____

Add lines 2 through 4 (including amounts on any additional sheets). Copy the total to line 80.

## Part 2:    Deposits and prepayments

6.  **Does the debtor have any deposits or prepayments?**

☐ No. Go to Part 3.
☐ Yes. Fill in the information below.

| | Current value of debtor's interest |
|---|---|

7.  **Deposits, including security deposits and utility deposits**

Description, including name of holder of deposit
7.1. _____    $_____
7.2. _____    $_____

Debtor _____ Case number *(if known)*_____
              Name

**8. Prepayments, including prepayments on executory contracts, leases, insurance, taxes, and rent**

Description, including name of holder of prepayment

8.1. _____     $_____

8.2. _____     $_____

**9. Total of Part 2.**

Add lines 7 through 8. Copy the total to line 81.                                          $_____

---

**Part 3:   Accounts receivable**

**10. Does the debtor have any accounts receivable?**

❑ No. Go to Part 4.

❑ Yes. Fill in the information below.

| | Current value of debtor's interest |
|---|---|

**11. Accounts receivable**

11a. 90 days old or less:   _____ – _____ = ........ ➡   $_____
                              face amount        doubtful or uncollectible accounts

11b. Over 90 days old:     _____ – _____ = ........ ➡   $_____
                              face amount        doubtful or uncollectible accounts

**12. Total of Part 3**

Current value on lines 11a + 11b = line 12. Copy the total to line 82.                     $_____

---

**Part 4:   Investments**

**13. Does the debtor own any investments?**

❑ No. Go to Part 5.

❑ Yes. Fill in the information below.

| | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|

**14. Mutual funds or publicly traded stocks not included in Part 1**

Name of fund or stock:

14.1. _____     _____     $_____

14.2. _____     _____     $_____

**15. Non-publicly traded stock and interests in incorporated and unincorporated businesses, including any interest in an LLC, partnership, or joint venture**

Name of entity:                                     % of ownership:

15.1. _____     _____%     _____     $_____

15.2._____     _____%     _____     $_____

**16. Government bonds, corporate bonds, and other negotiable and non-negotiable instruments not included in Part 1**

Describe:

16.1._____     _____     $_____

16.2._____     _____     $_____

**17. Total of Part 4**

Add lines 14 through 16. Copy the total to line 83.                                        $_____

---

Debtor _____    Case number _(if known)_ _____
     Name

---

| **Part 5:** | **Inventory, excluding agriculture assets** |

**18. Does the debtor own any inventory (excluding agriculture assets)?**

☐ No. Go to Part 6.

☐ Yes. Fill in the information below.

| General description | Date of the last physical inventory | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|---|
| **19. Raw materials** _____ | _____ MM / DD / YYYY | $_____ | _____ | $_____ |
| **20. Work in progress** _____ | _____ MM / DD / YYYY | $_____ | _____ | $_____ |
| **21. Finished goods, including goods held for resale** _____ | _____ MM / DD / YYYY | $_____ | _____ | $_____ |
| **22. Other inventory or supplies** _____ | _____ MM / DD / YYYY | $_____ | _____ | $_____ |

**23. Total of Part 5**

Add lines 19 through 22. Copy the total to line 84.

$_____

**24. Is any of the property listed in Part 5 perishable?**

☐ No

☐ Yes

**25. Has any of the property listed in Part 5 been purchased within 20 days before the bankruptcy was filed?**

☐ No

☐ Yes. Book value _____ Valuation method_____ Current value_____

**26. Has any of the property listed in Part 5 been appraised by a professional within the last year?**

☐ No

☐ Yes

---

| **Part 6:** | **Farming and fishing-related assets (other than titled motor vehicles and land)** |

**27. Does the debtor own or lease any farming and fishing-related assets (other than titled motor vehicles and land)?**

☐ No. Go to Part 7.

☐ Yes. Fill in the information below.

| General description | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| **28. Crops—either planted or harvested** _____ | $_____ | _____ | $_____ |
| **29. Farm animals** _Examples_: Livestock, poultry, farm-raised fish _____ | $_____ | _____ | $_____ |
| **30. Farm machinery and equipment** (Other than titled motor vehicles) _____ | $_____ | _____ | $_____ |
| **31. Farm and fishing supplies, chemicals, and feed** _____ | $_____ | _____ | $_____ |
| **32. Other farming and fishing-related property not already listed in Part 6** _____ | $_____ | _____ | $_____ |

---

Debtor _____ Case number *(if known)*_____
       Name

33. **Total of Part 6.**

   Add lines 28 through 32. Copy the total to line 85.                          $_____

34. **Is the debtor a member of an agricultural cooperative?**

   ☐ No

   ☐ Yes. Is any of the debtor's property stored at the cooperative?

   　☐ No

   　☐ Yes

35. **Has any of the property listed in Part 6 been purchased within 20 days before the bankruptcy was filed?**

   ☐ No

   ☐ Yes. Book value $_____  Valuation method _____  Current value $_____

36. **Is a depreciation schedule available for any of the property listed in Part 6?**

   ☐ No

   ☐ Yes

37. **Has any of the property listed in Part 6 been appraised by a professional within the last year?**

   ☐ No

   ☐ Yes

---

**Part 7:    Office furniture, fixtures, and equipment; and collectibles**

38. **Does the debtor own or lease any office furniture, fixtures, equipment, or collectibles?**

   ☐ No. Go to Part 8.

   ☐ Yes. Fill in the information below.

| General description | Net book value of debtor's interest<br>(Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| 39. **Office furniture** | | | |
| _____ | $_____ | _____ | $_____ |
| 40. **Office fixtures** | | | |
| _____ | $_____ | _____ | $_____ |
| 41. **Office equipment, including all computer equipment and communication systems equipment and software** | | | |
| _____ | $_____ | _____ | $_____ |
| 42. **Collectibles** *Examples:* Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects; china and crystal; stamp, coin, or baseball card collections; other collections, memorabilia, or collectibles | | | |
| 42.1_____ | $_____ | _____ | $_____ |
| 42.2_____ | $_____ | _____ | $_____ |
| 42.3_____ | $_____ | _____ | $_____ |

43. **Total of Part 7.**

   Add lines 39 through 42. Copy the total to line 86.                          $_____

44. **Is a depreciation schedule available for any of the property listed in Part 7?**

   ☐ No

   ☐ Yes

45. **Has any of the property listed in Part 7 been appraised by a professional within the last year?**

   ☐ No

   ☐ Yes

Debtor _____    Case number *(if known)*_____
       Name

---

| Part 8: | Machinery, equipment, and vehicles |
|---|---|

46. **Does the debtor own or lease any machinery, equipment, or vehicles?**

☐ No. Go to Part 9.

☐ Yes. Fill in the information below.

| General description<br><br>Include year, make, model, and identification numbers (i.e., VIN, HIN, or N-number) | Net book value of debtor's interest<br><br>(Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| **47. Automobiles, vans, trucks, motorcycles, trailers, and titled farm vehicles** | | | |
| 47.1_____ | $_____ | _____ | $_____ |
| 47.2_____ | $_____ | _____ | $_____ |
| 47.3_____ | $_____ | _____ | $_____ |
| 47.4_____ | $_____ | _____ | $_____ |
| **48. Watercraft, trailers, motors, and related accessories** Examples: Boats, trailers, motors, floating homes, personal watercraft, and fishing vessels | | | |
| 48.1_____ | $_____ | _____ | $_____ |
| 48.2_____ | $_____ | _____ | $_____ |
| **49. Aircraft and accessories** | | | |
| 49.1_____ | $_____ | _____ | $_____ |
| 49.2_____ | $_____ | _____ | $_____ |
| **50. Other machinery, fixtures, and equipment (excluding farm machinery and equipment)** | | | |
| _____ | $_____ | _____ | $_____ |

51. **Total of Part 8.**

Add lines 47 through 50. Copy the total to line 87.

$_____

52. **Is a depreciation schedule available for any of the property listed in Part 8?**

☐ No

☐ Yes

53. **Has any of the property listed in Part 8 been appraised by a professional within the last year?**

☐ No

☐ Yes

---

Debtor _____   Case number _(if known)_____
Name

## Part 9:   Real property

54. **Does the debtor own or lease any real property?**
    ☐ No. Go to Part 10.
    ☐ Yes. Fill in the information below.

55. **Any building, other improved real estate, or land which the debtor owns or in which the debtor has an interest**

| Description and location of property<br>Include street address or other description such as Assessor Parcel Number (APN), and type of property (for example, acreage, factory, warehouse, apartment or office building), if available. | Nature and extent of debtor's interest in property | Net book value of debtor's interest<br>(Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|---|
| 55.1_____ | _____ | $_____ | _____ | $_____ |
| 55.2_____ | _____ | $_____ | _____ | $_____ |
| 55.3_____ | _____ | $_____ | _____ | $_____ |
| 55.4_____ | _____ | $_____ | _____ | $_____ |
| 55.5_____ | _____ | $_____ | _____ | $_____ |
| 55.6_____ | _____ | $_____ | _____ | $_____ |

56. **Total of Part 9.**
    Add the current value on lines 55.1 through 55.6 and entries from any additional sheets. Copy the total to line 88.

    $_____

57. **Is a depreciation schedule available for any of the property listed in Part 9?**
    ☐ No
    ☐ Yes

58. **Has any of the property listed in Part 9 been appraised by a professional within the last year?**
    ☐ No
    ☐ Yes

## Part 10:   Intangibles and intellectual property

59. **Does the debtor have any interests in intangibles or intellectual property?**
    ☐ No. Go to Part 11.
    ☐ Yes. Fill in the information below.

| General description | Net book value of debtor's interest<br>(Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| 60. **Patents, copyrights, trademarks, and trade secrets**<br>_____ | $_____ | _____ | $_____ |
| 61. **Internet domain names and websites**<br>_____ | $_____ | _____ | $_____ |
| 62. **Licenses, franchises, and royalties**<br>_____ | $_____ | _____ | $_____ |
| 63. **Customer lists, mailing lists, or other compilations**<br>_____ | $_____ | _____ | $_____ |
| 64. **Other intangibles, or intellectual property**<br>_____ | $_____ | _____ | $_____ |
| 65. **Goodwill**<br>_____ | $_____ | _____ | $_____ |

66. **Total of Part 10.**
    Add lines 60 through 65. Copy the total to line 89.

    $_____

Debtor _____   Case number _(if known)_____
        Name

67. **Do your lists or records include personally identifiable information of customers** (as defined in 11 U.S.C. §§ 101(41A) and 107)**?**

❑ No

❑ Yes

68. **Is there an amortization or other similar schedule available for any of the property listed in Part 10?**

❑ No

❑ Yes

69. **Has any of the property listed in Part 10 been appraised by a professional within the last year?**

❑ No

❑ Yes

## Part 11:   All other assets

70. **Does the debtor own any other assets that have not yet been reported on this form?**

Include all interests in executory contracts and unexpired leases not previously reported on this form.

❑ No. Go to Part 12.

❑ Yes. Fill in the information below.

|  | Current value of debtor's interest |
|---|---|

71. **Notes receivable**

Description (include name of obligor)

_____     _____  −  _____  = ➜  $_____
                                       Total face amount    doubtful or uncollectible amount

72. **Tax refunds and unused net operating losses (NOLs)**

Description (for example, federal, state, local)

_____   Tax year _____   $_____
_____   Tax year _____   $_____
_____   Tax year _____   $_____

73. **Interests in insurance policies or annuities**

_____                         $_____

74. **Causes of action against third parties (whether or not a lawsuit has been filed)**

_____                         $_____

Nature of claim         _____

Amount requested        $_____

75. **Other contingent and unliquidated claims or causes of action of every nature, including counterclaims of the debtor and rights to set off claims**

_____                         $_____

Nature of claim         _____

Amount requested        $_____

76. **Trusts, equitable or future interests in property**

_____                         $_____

77. **Other property of any kind not already listed** _Examples:_ Season tickets, country club membership

_____                         $_____
_____                         $_____

78. **Total of Part 11.**

Add lines 71 through 77. Copy the total to line 90.                     $_____

79. **Has any of the property listed in Part 11 been appraised by a professional within the last year?**

❑ No

❑ Yes

Debtor _____   Case number _(if known)_ _____
       Name

---

| **Part 12:** | **Summary** |

In Part 12 copy all of the totals from the earlier parts of the form.

| Type of property | Current value of personal property | Current value of real property |
|---|---|---|
| 80. **Cash, cash equivalents, and financial assets.** *Copy line 5, Part 1.* | $_____ | |
| 81. **Deposits and prepayments.** *Copy line 9, Part 2.* | $_____ | |
| 82. **Accounts receivable.** *Copy line 12, Part 3.* | $_____ | |
| 83. **Investments.** *Copy line 17, Part 4.* | $_____ | |
| 84. **Inventory.** *Copy line 23, Part 5.* | $_____ | |
| 85. **Farming and fishing-related assets.** *Copy line 33, Part 6.* | $_____ | |
| 86. **Office furniture, fixtures, and equipment; and collectibles.** *Copy line 43, Part 7.* | $_____ | |
| 87. **Machinery, equipment, and vehicles.** *Copy line 51, Part 8.* | $_____ | |
| 88. **Real property.** *Copy line 56, Part 9.* . ........................................... ➜ | | $_____ |
| 89. **Intangibles and intellectual property.** *Copy line 66, Part 10.* | $_____ | |
| 90. **All other assets.** *Copy line 78, Part 11.* | **+** $_____ | |
| 91. **Total.** Add lines 80 through 90 for each column. ...........................91a. | $_____ **+** 91b. | $_____ |

92. **Total of all property on Schedule A/B.**  Lines 91a + 91b = 92. ........................................................................  $_____

---

# Exhibit B
# Projected Income and Expenses

# Projected Income and Expenses – Summarized by Category

**Church and State - Planned Cash Flow Projections 2018/2019**

| | January-18 | | February-18 | | March-18 | | April-18 | | May-18 | |
|---|---:|---:|---:|---:|---:|---:|---:|---:|---:|---:|
| **Beginning Cash Balance** | 10,000 | | 16,739 | | 18,238 | | 16,478 | | 16,478 | |
| **Ending Cash Balance** | 16,739 | | 18,238 | | 16,478 | | 16,095 | | 19,330 | |
| **\*\*NET SALES\*\* (Assumes 3% increase)** | | | | | | | | | | |
| FOOD SALES: | 139,732 | 66.1% | 127,660 | 66.1% | 120,151 | 66.1% | 123,323 | 66.1% | 131,659 | 66.1% |
| BEER/WINE SALES | 41,823 | 19.8% | 38,209 | 19.8% | 35,962 | 19.8% | 36,911 | 19.8% | 39,406 | 19.8% |
| LIQUOR SALES | 20,616 | 9.8% | 18,835 | 9.8% | 17,727 | 9.8% | 18,195 | 9.8% | 19,425 | 9.8% |
| BEVERAGE SALES: | 9,135 | 4.3% | 8,346 | 4.3% | 7,855 | 4.3% | 8,062 | 4.3% | 8,607 | 4.3% |
| **TOTAL COST SALES** | 211,306 | 100.0% | 193,050 | 100.0% | 181,695 | 100.0% | 186,491 | 100.0% | 199,098 | 100.0% |
| | | | | | | | | | | |
| **\*\*COST OF SALES\*\*** | | | | | | | | | | |
| FOOD COST OF SALES | 39,125 | 28.0% | 35,745 | 28.0% | 33,642 | 28.0% | 34,530 | 28.0% | 36,865 | 28.0% |
| BEER/WINE COST OF SALES | 11,710 | 28.0% | 10,699 | 28.0% | 10,069 | 28.0% | 10,335 | 28.0% | 11,034 | 28.0% |
| LIQUOR COST OF SALES | 3,299 | 16.0% | 3,014 | 16.0% | 2,836 | 16.0% | 2,911 | 16.0% | 3,108 | 16.0% |
| BEVERAGE COST OF SALES | 1,736 | 19.0% | 1,586 | 19.0% | 1,492 | 19.0% | 1,532 | 19.0% | 1,635 | 19.0% |
| **TOTAL COST SALES** | 55,870 | 26.4% | 51,043 | 26.4% | 48,041 | 26.4% | 49,309 | 26.4% | 52,642 | 26.4% |
| | | | | | | | | | | |
| **TOTAL GROSS MARGIN** | 155,437 | 73.6% | 142,007 | 73.6% | 133,655 | 73.6% | 137,183 | 73.6% | 146,456 | 73.6% |
| | | | | | | | | | | |
| **PAYROLL:** | | | | | | | | | | |
| INSIDER SALARIES | 12,500 | 5.9% | 12,500 | 6.5% | 12,500 | 6.9% | 12,500 | 6.7% | 12,500 | 6.3% |
| RESTAURANT PAYROLL | 66,663 | 31.5% | 62,336 | 32.3% | 59,645 | 32.8% | 60,782 | 32.6% | 63,770 | 32.0% |
| **TOTAL PAYROLL** | 79,163 | 37.5% | 74,836 | 38.8% | 72,145 | 39.7% | 73,282 | 39.3% | 76,270 | 38.3% |
| | | | | | | | | | | |
| **BENEFITS:** | | | | | | | | | | |
| TOTAL BENEFITS | 21,402 | 10.1% | 19,887 | 10.3% | 18,944 | 10.4% | 19,342 | 10.4% | 20,389 | 10.2% |
| | | | | | | | | | | |
| **TOTAL LABOR** | 100,565 | 47.6% | 94,723 | 49.1% | 91,090 | 50.1% | 92,624 | 49.7% | 96,658 | 48.5% |
| | | | | | | | | | | |
| **PRIME COSTS** | 156,435 | 74.0% | 145,766 | 75.5% | 139,130 | 76.6% | 141,933 | 76.1% | 149,300 | 75.0% |
| | | | | | | | | | | |
| **CONTROLLABLES** | 18,349 | 8.7% | 17,373 | 9.0% | 16,766 | 9.2% | 17,022 | 9.1% | 17,696 | 8.9% |
| | | | | | | | | | | |
| **NON-CONTROLLABLES** | 15,872 | 7.5% | 15,379 | 8.0% | 15,072 | 8.3% | 15,202 | 8.2% | 15,542 | 7.8% |
| | | | | | | | | | | |
| **MANAGED INCOME** | 20,651 | 9.8% | 14,532 | 7.5% | 10,727 | 5.9% | 12,334 | 6.6% | 16,559 | 8.3% |
| | | | | | | | | | | |
| **OCCUPANCY:** | 13,912 | 6.6% | 13,033 | 6.8% | 12,486 | 6.9% | 12,717 | 6.8% | 13,324 | 6.7% |
| | | | | | | | | | | |
| **STORE INCOME** | 6,739 | 3.2% | 1,499 | 0.8% | (1,759) | -1.0% | (383) | -0.2% | 3,235 | 1.6% |

**Church and State - Planned Cash Flow Pr**

| | June-18 | | July-18 | | August-18 | | September-18 | | October-18 | |
|---|---|---|---|---|---|---|---|---|---|---|
| Beginning Cash Balance | 19,330 | | 16,516 | | 16,290 | | 6,957 | | 4,354 | |
| Ending Cash Balance | 16,290 | | 16,516 | | 6,957 | | 4,354 | | 5,418 | |
| **NET SALES** (Assumes 3% increase) | | | | | | | | | | |
| FOOD SALES: | 117,200 | 66.1% | 124,726 | 66.1% | 102,178 | 66.1% | 118,210 | 66.1% | 126,656 | 66.1% |
| BEER/WINE SALES | 35,079 | 19.8% | 37,331 | 19.8% | 30,582 | 19.8% | 35,381 | 19.8% | 37,909 | 19.8% |
| LIQUOR SALES | 17,292 | 9.8% | 18,402 | 9.8% | 15,075 | 9.8% | 17,441 | 9.8% | 18,687 | 9.8% |
| BEVERAGE SALES: | 7,662 | 4.3% | 8,154 | 4.3% | 6,680 | 4.3% | 7,728 | 4.3% | 8,280 | 4.3% |
| **TOTAL NET SALES** | 177,233 | 100.0% | 188,613 | 100.0% | 154,516 | 100.0% | 178,759 | 100.0% | 191,532 | 100.0% |
| **COST OF SALES** | | | | | | | | | | |
| FOOD COST OF SALES | 32,816 | 28.0% | 34,923 | 28.0% | 28,610 | 28.0% | 33,099 | 28.0% | 35,464 | 28.0% |
| BEER/WINE COST OF SALES | 9,822 | 28.0% | 10,453 | 28.0% | 8,563 | 28.0% | 9,907 | 28.0% | 10,614 | 28.0% |
| LIQUOR COST OF SALES | 2,767 | 16.0% | 2,944 | 16.0% | 2,412 | 16.0% | 2,791 | 16.0% | 2,990 | 16.0% |
| BEVERAGE COST OF SALES | 1,456 | 19.0% | 1,549 | 19.0% | 1,269 | 19.0% | 1,468 | 19.0% | 1,573 | 19.0% |
| **TOTAL COST SALES** | 46,861 | 26.4% | 49,870 | 26.4% | 40,854 | 26.4% | 47,264 | 26.4% | 50,641 | 26.4% |
| **TOTAL GROSS MARGIN** | 130,372 | 73.6% | 138,744 | 73.6% | 113,662 | 73.6% | 131,495 | 73.6% | 140,890 | 73.6% |
| **PAYROLL:** | | | | | | | | | | |
| INSIDER SALARIES | 12,500 | 7.1% | 12,500 | 6.6% | 12,500 | 8.1% | 12,500 | 7.0% | 12,500 | 6.5% |
| RESTAURANT PAYROLL | 58,588 | 33.1% | 61,285 | 32.5% | 53,204 | 34.4% | 58,949 | 33.0% | 61,976 | 32.4% |
| TOTAL PAYROLL | 71,088 | 40.1% | 73,785 | 39.1% | 65,704 | 42.5% | 71,449 | 40.0% | 74,476 | 38.9% |
| **BENEFITS:** | | | | | | | | | | |
| TOTAL BENEFITS | 18,574 | 10.5% | 19,519 | 10.3% | 16,688 | 10.8% | 18,701 | 10.5% | 19,761 | 10.3% |
| **TOTAL LABOR** | 89,662 | 50.6% | 93,303 | 49.5% | 82,392 | 53.3% | 90,150 | 50.4% | 94,237 | 49.2% |
| **PRIME COSTS** | 136,522 | 77.0% | 143,173 | 75.9% | 123,246 | 79.8% | 137,414 | 76.9% | 144,878 | 75.6% |
| **CONTROLLABLES** | 16,527 | 9.3% | 17,136 | 9.1% | 15,313 | 9.9% | 16,609 | 9.3% | 17,292 | 9.0% |
| **NON-CONTROLLABLES** | 14,952 | 8.4% | 15,259 | 8.1% | 14,339 | 9.3% | 14,993 | 8.4% | 15,338 | 8.0% |
| **MANAGED INCOME** | 9,231 | 5.2% | 13,046 | 6.9% | 1,618 | 1.0% | 9,743 | 5.5% | 14,024 | 7.3% |
| **OCCUPANCY:** | 12,271 | 6.9% | 12,819 | 6.8% | 11,178 | 7.2% | 12,345 | 6.9% | 12,960 | 6.8% |
| **STORE INCOME** | (3,040) | -1.7% | 226 | 0.1% | (9,560) | -6.2% | (2,602) | -1.5% | 1,064 | 0.6% |

**Church and State - Planned Cash Flow Pr**

| | November-18 | | December-18 | | January-19 | | February-19 | | March-19 | |
|---|---|---|---|---|---|---|---|---|---|---|
| **Beginning Cash Balance** | 5,418 | | 2,809 | | 9,818 | | 18,376 | | 21,538 | |
| **Ending Cash Balance** | 2,809 | | 9,818 | | 18,376 | | 21,538 | | 21,342 | |
| **\*\*NET SALES\*\* (Assumes 3% increase)** | | | | | | | | | | |
| FOOD SALES: | 118,193 | 66.1% | 140,357 | 66.1% | 143,924 | 66.1% | 131,490 | 66.1% | 123,756 | 66.1% |
| BEER/WINE SALES: | 35,376 | 19.8% | 42,009 | 19.8% | 43,077 | 19.8% | 39,356 | 19.8% | 37,041 | 19.8% |
| LIQUOR SALES: | 17,438 | 9.8% | 20,708 | 9.8% | 21,235 | 9.8% | 19,400 | 9.8% | 18,259 | 9.8% |
| BEVERAGE SALES: | 7,727 | 4.3% | 9,176 | 4.3% | 9,409 | 4.3% | 8,596 | 4.3% | 8,091 | 4.3% |
| | 178,734 | 100.0% | 212,250 | 100.0% | 217,645 | 100.0% | 198,841 | 100.0% | 187,146 | 100.0% |
| **\*\*COST OF SALES\*\*** | | | | | | | | | | |
| FOOD COST OF SALES | 33,094 | 28.0% | 39,300 | 28.0% | 40,299 | 28.0% | 36,817 | 28.0% | 34,652 | 28.0% |
| BEER/WINE COST OF SALES | 9,905 | 28.0% | 11,763 | 28.0% | 12,062 | 28.0% | 11,020 | 28.0% | 10,371 | 28.0% |
| LIQUOR COST OF SALES | 2,790 | 16.0% | 3,313 | 16.0% | 3,398 | 16.0% | 3,104 | 16.0% | 2,921 | 16.0% |
| BEVERAGE COST OF SALES | 1,468 | 19.0% | 1,743 | 19.0% | 1,788 | 19.0% | 1,633 | 19.0% | 1,537 | 19.0% |
| **TOTAL COST SALES** | 47,258 | 26.4% | 56,119 | 26.4% | 57,546 | 26.4% | 52,574 | 26.4% | 49,482 | 26.4% |
| **TOTAL GROSS MARGIN** | 131,477 | 73.6% | 156,131 | 73.6% | 160,100 | 73.6% | 146,267 | 73.6% | 137,665 | 73.6% |
| **PAYROLL:** | | | | | | | | | | |
| INSIDER SALARIES | 12,500 | 7.0% | 12,500 | 5.9% | 12,500 | 5.7% | 12,500 | 6.3% | 12,500 | 6.7% |
| RESTAURANT PAYROLL | 58,943 | 33.0% | 66,887 | 31.5% | 68,165 | 31.3% | 63,709 | 32.0% | 60,937 | 32.6% |
| TOTAL PAYROLL | 71,443 | 40.0% | 79,387 | 37.4% | 80,665 | 37.1% | 76,209 | 38.3% | 73,437 | 39.2% |
| **BENEFITS:** | | | | | | | | | | |
| TOTAL BENEFITS | 18,699 | 10.5% | 21,480 | 10.1% | 21,928 | 10.1% | 20,367 | 10.2% | 19,397 | 10.4% |
| **TOTAL LABOR** | 90,142 | 50.4% | 100,867 | 47.5% | 102,594 | 47.1% | 96,576 | 48.6% | 92,834 | 49.6% |
| **PRIME COSTS** | 137,399 | 76.9% | 156,986 | 74.0% | 160,139 | 73.6% | 149,150 | 75.0% | 142,316 | 76.0% |
| **CONTROLLABLES** | 16,608 | 9.3% | 18,399 | 8.7% | 18,688 | 8.6% | 17,682 | 8.9% | 17,057 | 9.1% |
| **NON-CONTROLLABLES** | 14,992 | 8.4% | 15,897 | 7.5% | 16,043 | 7.4% | 15,535 | 7.8% | 15,220 | 8.1% |
| **MANAGED INCOME** | 9,734 | 5.4% | 20,967 | 9.9% | 22,775 | 10.5% | 16,473 | 8.3% | 12,554 | 6.7% |
| **OCCUPANCY:** | 12,344 | 6.9% | 13,958 | 6.6% | 14,217 | 6.5% | 13,312 | 6.7% | 12,749 | 6.8% |
| **STORE INCOME** | (2,609) | -1.5% | 7,010 | 3.3% | 8,558 | 3.9% | 3,161 | 1.6% | (195) | -0.1% |

# Projected Income and Expenses – Detailed

**Church and State - Planned Cash Flow Projections 2018/2019**

| | January-18 | % | February-18 | % | March-18 | % | April-18 | % | May-18 | % |
|---|---|---|---|---|---|---|---|---|---|---|
| **Beginning Cash Balance** | 10,000 | | 16,739 | | 18,238 | | 16,478 | | 16,095 | |
| **Ending Cash Balance** | 16,739 | | 18,238 | | 16,478 | | 16,095 | | 19,330 | |
| **\*\*NET SALES\*\* (Assumes 3% increase)** | | | | | | | | | | |
| FOOD SALES: | 139,732 | 66.1% | 127,660 | 66.1% | 120,151 | 66.1% | 123,323 | 66.1% | 131,659 | 66.1% |
| BEER/WINE SALES | 41,823 | 19.8% | 38,209 | 19.8% | 35,962 | 19.8% | 36,911 | 19.8% | 39,406 | 19.8% |
| LIQUOR SALES | 20,616 | 9.8% | 18,835 | 9.8% | 17,727 | 9.8% | 18,195 | 9.8% | 19,425 | 9.8% |
| BEVERAGE SALES: | 9,135 | 4.3% | 8,346 | 4.3% | 7,855 | 4.3% | 8,062 | 4.3% | 8,607 | 4.3% |
| | 211,306 | 100.0% | 193,050 | 100.0% | 181,695 | 100.0% | 186,491 | 100.0% | 199,098 | 100.0% |
| **\*\*COST OF SALES\*\*** | | | | | | | | | | |
| FOOD COST OF SALES | 39,125 | 28.0% | 35,745 | 28.0% | 33,642 | 28.0% | 34,530 | 28.0% | 36,865 | 28.0% |
| BEER/WINE COST OF SALES | 11,710 | 28.0% | 10,699 | 28.0% | 10,069 | 28.0% | 10,335 | 28.0% | 11,034 | 28.0% |
| LIQUOR COST OF SALES | 3,299 | 16.0% | 3,014 | 16.0% | 2,836 | 16.0% | 2,911 | 16.0% | 3,108 | 16.0% |
| BEVERAGE COST OF SALES | 1,736 | 19.0% | 1,586 | 19.0% | 1,492 | 19.0% | 1,532 | 19.0% | 1,635 | 19.0% |
| TOTAL COST SALES | 55,870 | 26.4% | 51,043 | 26.4% | 48,041 | 26.4% | 49,309 | 26.4% | 52,642 | 26.4% |
| **TOTAL GROSS MARGIN** | 155,437 | 73.6% | 142,007 | 73.6% | 133,655 | 73.6% | 137,183 | 73.6% | 146,456 | 73.6% |
| **PAYROLL:** | | | | | | | | | | |
| INSIDER SALARIES | 12,500 | 5.9% | 12,500 | 6.5% | 12,500 | 6.9% | 12,500 | 6.7% | 12,500 | 6.3% |
| RESTAURANT PAYROLL | 66,663 | 31.5% | 62,336 | 32.3% | 59,645 | 32.8% | 60,782 | 32.6% | 63,770 | 32.0% |
| TOTAL PAYROLL | 79,163 | 37.5% | 74,836 | 38.8% | 72,145 | 39.7% | 73,282 | 39.3% | 76,270 | 38.3% |
| **BENEFITS:** | | | | | | | | | | |
| TOTAL BENEFITS | 21,402 | 10.1% | 19,887 | 10.3% | 18,944 | 10.4% | 19,342 | 10.4% | 20,389 | 10.2% |
| **TOTAL LABOR** | 100,565 | 47.6% | 94,723 | 49.1% | 91,090 | 50.1% | 92,624 | 49.7% | 96,658 | 48.5% |
| **PRIME COSTS** | 156,435 | 74.0% | 145,766 | 75.5% | 139,130 | 76.6% | 141,933 | 76.1% | 149,300 | 75.0% |
| **CONTROLLABLES:** | | | | | | | | | | |
| SUPPLIES | | | | | | | | | | |
| CLEANING | 1,057 | 0.5% | 965 | 0.5% | 908 | 0.5% | 932 | 0.5% | 995 | 0.5% |
| PACKAGING | 317 | 0.2% | 290 | 0.2% | 273 | 0.2% | 280 | 0.2% | 299 | 0.2% |
| OFFICE | 53 | 0.0% | 48 | 0.0% | 45 | 0.0% | 47 | 0.0% | 50 | 0.0% |
| OPERATING | 2,113 | 1.0% | 1,930 | 1.0% | 1,817 | 1.0% | 1,865 | 1.0% | 1,991 | 1.0% |
| UNIFORMS | 53 | 0.0% | 48 | 0.0% | 45 | 0.0% | 47 | 0.0% | 50 | 0.0% |
| DUES/SUBSCRIPTIONS | 106 | 0.1% | 97 | 0.1% | 91 | 0.1% | 93 | 0.1% | 100 | 0.1% |
| OUTSIDE SERVICES | | | | | | | | | | |
| LINEN | 2,113 | 1.0% | 1,930 | 1.0% | 1,817 | 1.0% | 1,865 | 1.0% | 1,991 | 1.0% |
| JANITORIAL | 75 | 0.0% | 75 | 0.0% | 75 | 0.0% | 75 | 0.0% | 75 | 0.0% |
| POSTAGE/DEL. | 50 | 0.0% | 50 | 0.0% | 50 | 0.0% | 50 | 0.0% | 50 | 0.0% |

# Church and State - Planned Cash Flow Projections 2018/2019

| | January-18 | | February-18 | | March-18 | | April-18 | | May-18 | |
|---|---|---|---|---|---|---|---|---|---|---|
| DISPLAYS | 287 | 0.1% | 287 | 0.1% | 287 | 0.1% | 287 | 0.2% | 287 | 0.1% |
| EXTERMINATION | 110 | 0.1% | 110 | 0.1% | 110 | 0.1% | 110 | 0.1% | 110 | 0.1% |
| CABLE TV | 400 | 0.2% | 400 | 0.2% | 400 | 0.2% | 400 | 0.2% | 400 | 0.2% |
| REPAIRS/MNTNCE | | | | | | | | | | |
| VARIABLE | 3,170 | 1.5% | 2,896 | 1.5% | 2,725 | 1.5% | 2,797 | 1.5% | 2,986 | 1.5% |
| SMALLWARES | | | | | | | | | | |
| DINING ROOM | 106 | 0.1% | 97 | 0.1% | 91 | 0.1% | 93 | 0.1% | 100 | 0.1% |
| KITCHEN | 106 | 0.1% | 97 | 0.1% | 91 | 0.1% | 93 | 0.1% | 100 | 0.1% |
| UTILITIES | | | | | | | | | | |
| ELECTRICITY | 3,300 | 1.6% | 3,300 | 1.7% | 3,300 | 1.8% | 3,300 | 1.8% | 3,300 | 1.7% |
| GAS | 1,100 | 0.5% | 1,100 | 0.6% | 1,100 | 0.6% | 1,100 | 0.6% | 1,100 | 0.6% |
| TELEPHONE | 215 | 0.1% | 215 | 0.1% | 215 | 0.1% | 215 | 0.1% | 215 | 0.1% |
| WATER | 550 | 0.3% | 550 | 0.3% | 550 | 0.3% | 550 | 0.3% | 550 | 0.3% |
| GARBAGE | 550 | 0.3% | 550 | 0.3% | 550 | 0.3% | 550 | 0.3% | 550 | 0.3% |
| TRAVEL & MEALS | | | | | | | | | | |
| Travel/Meals/Research | 250 | 0.1% | 250 | 0.1% | 250 | 0.1% | 250 | 0.1% | 250 | 0.1% |
| EMPL GOODWILL | | | | | | | | | | |
| PARTIES | 167 | 0.1% | 167 | 0.1% | 167 | 0.1% | 167 | 0.1% | 167 | 0.1% |
| COMP MEALS | | | | | | | | | | |
| GUESTS | 1,585 | 0.8% | 1,448 | 0.8% | 1,363 | 0.8% | 1,399 | 0.8% | 1,493 | 0.8% |
| EMPLOYEES | 62 | 0.0% | 57 | 0.0% | 53 | 0.0% | 55 | 0.0% | 59 | 0.0% |
| DONATIONS | 353 | 0.2% | 322 | 0.2% | 303 | 0.2% | 311 | 0.2% | 332 | 0.2% |
| MANAGERS | 104 | 0.0% | 95 | 0.0% | 89 | 0.0% | 92 | 0.0% | 98 | 0.0% |
| **CONTROLLABLES** | 18,349 | 8.7% | 17,373 | 9.0% | 16,766 | 9.2% | 17,022 | 9.1% | 17,696 | 8.9% |
| | | | | | | | | | | |
| **NON-CONTROLLABLES:** | | | | | | | | | | |
| STORE AD/PROMO | 2,083 | 1.0% | 2,083 | 1.1% | 2,083 | 1.1% | 2,083 | 1.1% | 2,083 | 1.0% |
| CASH/BANKING | | | | | | | | | | |
| CREDIT CARDS | 5,705 | 2.7% | 5,212 | 2.7% | 4,906 | 2.7% | 5,035 | 2.7% | 5,376 | 2.7% |
| BANK FEES | 150 | 0.1% | 150 | 0.1% | 150 | 0.1% | 150 | 0.1% | 150 | 0.1% |
| PAYROLL SVCS. | 375 | 0.2% | 375 | 0.2% | 375 | 0.2% | 375 | 0.2% | 375 | 0.2% |
| ADMINISTRATIVE | | | | | | | | | | |
| OWNER R&D | - | | - | | - | | - | | - | |
| ACCTNG/TAX | 3,850 | 1.8% | 3,850 | 2.0% | 3,850 | 2.1% | 3,850 | 2.1% | 3,850 | 1.9% |
| LEGAL FEES | - | 0.0% | - | 0.0% | - | 0.0% | - | 0.0% | - | 0.0% |
| CONSULTING | 458 | 0.2% | 458 | 0.2% | 458 | 0.3% | 458 | 0.2% | 458 | 0.2% |
| MANAGEMENT FEE (3%) | - | 0.0% | - | 0.0% | - | 0.0% | - | 0.0% | - | 0.0% |
| LPP LEGAL FEES | 3,000 | 1.4% | 3,000 | 1.6% | 3,000 | 1.7% | 3,000 | 1.6% | 3,000 | 1.5% |
| RECRUITMENT & TRAINING | 250 | 0.1% | 250 | 0.1% | 250 | 0.1% | 250 | 0.1% | 250 | 0.1% |
| **NON-CONTROLLABLES** | 15,872 | 7.5% | 15,379 | 7.5% | 15,072 | 8.0% | 15,202 | 8.2% | 15,542 | 7.8% |
| | | | | | | | | | | |
| **MANAGED INCOME** | 20,651 | 9.8% | 14,532 | 7.5% | 10,727 | 5.9% | 12,334 | 6.6% | 16,559 | 8.3% |

**Church and State - Planned Cash Flow Projections 2018/2019**

| | January-18 | | February-18 | | March-18 | | April-18 | | May-18 | |
|---|---|---|---|---|---|---|---|---|---|---|
| OCCUPANCY: | | | | | | | | | | |
| MINIMUM RENT | 4,918 | 2.3% | 4,918 | 2.5% | 4,918 | 2.7% | 4,918 | 2.6% | 4,918 | 2.5% |
| PCT RENT | 5,171 | 2.4% | 4,292 | 2.2% | 3,745 | 2.1% | 3,976 | 2.1% | 4,583 | 2.3% |
| STORAGE RENT | 200 | 0.1% | 200 | 0.1% | 200 | 0.1% | 200 | 0.1% | 200 | 0.1% |
| EQUIP. RENTAL | 100 | 0.0% | 100 | 0.1% | 100 | 0.1% | 100 | 0.1% | 100 | 0.1% |
| AREA MNTNCE | 743 | 0.4% | 743 | 0.4% | 743 | 0.4% | 743 | 0.4% | 743 | 0.4% |
| PRPRTY TAXES | 615 | 0.3% | 615 | 0.3% | 615 | 0.3% | 615 | 0.3% | 615 | 0.3% |
| INSURANCE | 1,500 | 0.7% | 1,500 | 0.8% | 1,500 | 0.8% | 1,500 | 0.8% | 1,500 | 0.8% |
| TAX/LICENSE | 665 | 0.3% | 665 | 0.3% | 665 | 0.4% | 665 | 0.4% | 665 | 0.3% |
| DEPRN/AMORTN | - | 0.0% | - | 0.0% | - | 0.0% | - | 0.0% | - | 0.0% |
| **OCCUPANCY:** | 13,912 | 6.6% | 13,033 | 6.8% | 12,486 | 6.9% | 12,717 | 6.8% | 13,324 | 6.7% |
| **STORE INCOME** | 6,739 | 3.2% | 1,499 | 0.8% | (1,759) | -1.0% | (383) | -0.2% | 3,235 | 1.6% |

**Church and State - Planned Cash Flow Pro**

| | June-18 | % | July-18 | % | August-18 | % | September-18 | % | October-18 | % |
|---|---|---|---|---|---|---|---|---|---|---|
| **Beginning Cash Balance** | 19,330 | | 16,290 | | 16,516 | | 6,957 | | 4,354 | |
| **Ending Cash Balance** | 16,290 | | 16,516 | | 6,957 | | 4,354 | | 5,418 | |
| **\*\*NET SALES\*\* (Assumes 3% increase)** | | | | | | | | | | |
| FOOD SALES: | 117,200 | 66.1% | 124,726 | 66.1% | 102,178 | 66.1% | 118,210 | 66.1% | 126,656 | 66.1% |
| BEER/WINE SALES | 35,079 | 19.8% | 37,331 | 19.8% | 30,582 | 19.8% | 35,381 | 19.8% | 37,909 | 19.8% |
| LIQUOR SALES | 17,292 | 9.8% | 18,402 | 9.8% | 15,075 | 9.8% | 17,441 | 9.8% | 18,687 | 9.8% |
| BEVERAGE SALES: | 7,662 | 4.3% | 8,154 | 4.3% | 6,680 | 4.3% | 7,728 | 4.3% | 8,280 | 4.3% |
| | 177,233 | 100.0% | 188,613 | 100.0% | 154,516 | 100.0% | 178,759 | 100.0% | 191,532 | 100.0% |
| **\*\*COST OF SALES\*\*** | | | | | | | | | | |
| FOOD COST OF SALES | 32,816 | 28.0% | 34,923 | 28.0% | 28,610 | 28.0% | 33,099 | 28.0% | 35,464 | 28.0% |
| BEER/WINE COST OF SALES | 9,822 | 28.0% | 10,453 | 28.0% | 8,563 | 28.0% | 9,907 | 28.0% | 10,614 | 28.0% |
| LIQUOR COST OF SALES | 2,767 | 16.0% | 2,944 | 16.0% | 2,412 | 16.0% | 2,791 | 16.0% | 2,990 | 16.0% |
| BEVERAGE COST OF SALES | 1,456 | 19.0% | 1,549 | 19.0% | 1,269 | 19.0% | 1,468 | 19.0% | 1,573 | 19.0% |
| **TOTAL COST SALES** | 46,861 | 26.4% | 49,870 | 26.4% | 40,854 | 26.4% | 47,264 | 26.4% | 50,641 | 26.4% |
| **TOTAL GROSS MARGIN** | 130,372 | 73.6% | 138,744 | 73.6% | 113,662 | 73.6% | 131,495 | 73.6% | 140,890 | 73.6% |
| **PAYROLL:** | | | | | | | | | | |
| INSIDER SALARIES | 12,500 | 7.1% | 12,500 | 6.6% | 12,500 | 8.1% | 12,500 | 7.0% | 12,500 | 6.5% |
| RESTAURANT PAYROLL | 58,588 | 33.1% | 61,285 | 32.5% | 53,204 | 34.4% | 58,949 | 33.0% | 61,976 | 32.4% |
| TOTAL PAYROLL | 71,088 | 40.1% | 73,785 | 39.1% | 65,704 | 42.5% | 71,449 | 40.0% | 74,476 | 38.9% |
| **BENEFITS:** | | | | | | | | | | |
| TOTAL BENEFITS | 18,574 | 10.5% | 19,519 | 10.3% | 16,688 | 10.8% | 18,701 | 10.5% | 19,761 | 10.3% |
| **TOTAL LABOR** | 89,662 | 50.6% | 93,303 | 49.5% | 82,392 | 53.3% | 90,150 | 50.4% | 94,237 | 49.2% |
| **PRIME COSTS** | 136,522 | 77.0% | 143,173 | 75.9% | 123,246 | 79.8% | 137,414 | 76.9% | 144,878 | 75.6% |
| **CONTROLLABLES:** | | | | | | | | | | |
| SUPPLIES | | | | | | | | | | |
| CLEANING | 886 | 0.5% | 943 | 0.5% | 773 | 0.5% | 894 | 0.5% | 958 | 0.5% |
| PACKAGING | 266 | 0.2% | 283 | 0.2% | 232 | 0.2% | 268 | 0.2% | 287 | 0.2% |
| OFFICE | 44 | 0.0% | 47 | 0.0% | 39 | 0.0% | 45 | 0.0% | 48 | 0.0% |
| OPERATING | 1,772 | 1.0% | 1,886 | 1.0% | 1,545 | 1.0% | 1,788 | 1.0% | 1,915 | 1.0% |
| UNIFORMS | 44 | 0.0% | 47 | 0.0% | 39 | 0.0% | 45 | 0.0% | 48 | 0.0% |
| DUES/SUBSCRIPTIONS | 89 | 0.1% | 94 | 0.1% | 77 | 0.1% | 89 | 0.1% | 96 | 0.1% |
| OUTSIDE SERVICES | | | | | | | | | | |
| LINEN | 1,772 | 1.0% | 1,886 | 1.0% | 1,545 | 1.0% | 1,788 | 1.0% | 1,915 | 1.0% |
| JANITORIAL | 75 | 0.0% | 75 | 0.0% | 75 | 0.0% | 75 | 0.0% | 75 | 0.0% |
| POSTAGE/DEL. | 50 | 0.0% | 50 | 0.0% | 50 | 0.0% | 50 | 0.0% | 50 | 0.0% |

## Church and State - Planned Cash Flow Pro

| | June-18 | | July-18 | | August-18 | | September-18 | | October-18 | |
|---|---|---|---|---|---|---|---|---|---|---|
| DISPLAYS | 287 | 0.2% | 287 | 0.2% | 287 | 0.2% | 287 | 0.2% | 287 | 0.1% |
| EXTERMINATION | 110 | 0.1% | 110 | 0.1% | 110 | 0.1% | 110 | 0.1% | 110 | 0.1% |
| CABLE TV | 400 | 0.2% | 400 | 0.2% | 400 | 0.3% | 400 | 0.2% | 400 | 0.2% |
| REPAIRS/MNTNCE | | | | | | | | | | |
| VARIABLE | 2,658 | 1.5% | 2,829 | 1.5% | 2,318 | 1.5% | 2,681 | 1.5% | 2,873 | 1.5% |
| SMALLWARES | | | | | | | | | | |
| DINING ROOM | 89 | 0.1% | 94 | 0.1% | 77 | 0.1% | 89 | 0.1% | 96 | 0.1% |
| KITCHEN | 89 | 0.1% | 94 | 0.1% | 77 | 0.1% | 89 | 0.1% | 96 | 0.1% |
| UTILITIES | | | | | | | | | | |
| ELECTRICITY | 3,300 | 1.9% | 3,300 | 1.7% | 3,300 | 2.1% | 3,300 | 1.8% | 3,300 | 1.7% |
| GAS | 1,100 | 0.6% | 1,100 | 0.6% | 1,100 | 0.7% | 1,100 | 0.6% | 1,100 | 0.6% |
| TELEPHONE | 215 | 0.1% | 215 | 0.1% | 215 | 0.1% | 215 | 0.1% | 215 | 0.1% |
| WATER | 550 | 0.3% | 550 | 0.3% | 550 | 0.4% | 550 | 0.3% | 550 | 0.3% |
| GARBAGE | 550 | 0.3% | 550 | 0.3% | 550 | 0.4% | 550 | 0.3% | 550 | 0.3% |
| TRAVEL & MEALS | | | | | | | | | | |
| Travel/Meals/Research | 250 | 0.1% | 250 | 0.1% | 250 | 0.2% | 250 | 0.1% | 250 | 0.1% |
| EMPL GOODWILL | | | | | | | | | | |
| PARTIES | 167 | 0.1% | 167 | 0.1% | 167 | 0.1% | 167 | 0.1% | 167 | 0.1% |
| COMP MEALS | | | | | | | | | | |
| GUESTS | 1,329 | 0.8% | 1,415 | 0.8% | 1,159 | 0.8% | 1,341 | 0.8% | 1,436 | 0.8% |
| EMPLOYEES | 52 | 0.0% | 56 | 0.0% | 45 | 0.0% | 53 | 0.0% | 56 | 0.0% |
| DONATIONS | 296 | 0.2% | 315 | 0.2% | 258 | 0.2% | 298 | 0.2% | 320 | 0.2% |
| MANAGERS | 87 | 0.0% | 93 | 0.0% | 76 | 0.0% | 88 | 0.0% | 94 | 0.0% |
| **CONTROLLABLES** | 16,527 | 9.3% | 17,136 | 9.1% | 15,313 | 9.9% | 16,609 | 9.3% | 17,292 | 9.0% |
| **NON-CONTROLLABLES:** | | | | | | | | | | |
| STORE AD/PROMO | 2,083 | 1.2% | 2,083 | 1.1% | 2,083 | 1.3% | 2,083 | 1.2% | 2,083 | 1.1% |
| CASH/BANKING | | | | | | | | | | |
| CREDIT CARDS | 4,785 | 2.7% | 5,093 | 2.7% | 4,172 | 2.7% | 4,826 | 2.7% | 5,171 | 2.7% |
| BANK FEES | 150 | 0.1% | 150 | 0.1% | 150 | 0.1% | 150 | 0.1% | 150 | 0.1% |
| PAYROLL SVCS. | 375 | 0.2% | 375 | 0.2% | 375 | 0.2% | 375 | 0.2% | 375 | 0.2% |
| ADMINISTRATIVE | | | | | | | | | | |
| OWNER R&D | - | | - | | - | | - | | - | |
| ACCTNG/TAX | 3,850 | 2.2% | 3,850 | 2.0% | 3,850 | 2.5% | 3,850 | 2.2% | 3,850 | 2.0% |
| LEGAL FEES | - | 0.0% | - | 0.0% | - | 0.0% | - | 0.0% | - | 0.0% |
| CONSULTING | 458 | 0.3% | 458 | 0.2% | 458 | 0.3% | 458 | 0.3% | 458 | 0.2% |
| MANAGEMENT FEE (3%) | - | 0.0% | - | 0.0% | - | 0.0% | - | 0.0% | - | 0.0% |
| LPP LEGAL FEES | 3,000 | 1.7% | 3,000 | 1.6% | 3,000 | 1.9% | 3,000 | 1.7% | 3,000 | 1.6% |
| RECRUITMENT & TRAINING | 250 | 0.1% | 250 | 0.1% | 250 | 0.2% | 250 | 0.1% | 250 | 0.1% |
| **NON-CONTROLLABLES** | 14,952 | 8.4% | 15,259 | 8.1% | 14,339 | 9.3% | 14,993 | 8.4% | 15,338 | 8.0% |
| **MANAGED INCOME** | 9,231 | 5.2% | 13,046 | 6.9% | 1,618 | 1.0% | 9,743 | 5.5% | 14,024 | 7.3% |

**Church and State - Planned Cash Flow Pr**

| | June-18 | | July-18 | | August-18 | | September-18 | | October-18 | |
|---|---|---|---|---|---|---|---|---|---|---|
| OCCUPANCY: | | | | | | | | | | |
| MINIMUM RENT | 4,918 | 2.8% | 4,918 | 2.6% | 4,918 | 3.2% | 4,918 | 2.8% | 4,918 | 2.6% |
| PCT RENT | 3,530 | 2.0% | 4,078 | 2.2% | 2,436 | 1.6% | 3,604 | 2.0% | 4,219 | 2.2% |
| STORAGE RENT | 200 | 0.1% | 200 | 0.1% | 200 | 0.1% | 200 | 0.1% | 200 | 0.1% |
| EQUIP. RENTAL | 100 | 0.1% | 100 | 0.1% | 100 | 0.1% | 100 | 0.1% | 100 | 0.1% |
| AREA MNTNCE | 743 | 0.4% | 743 | 0.4% | 743 | 0.5% | 743 | 0.4% | 743 | 0.4% |
| PRPRTY TAXES | 615 | 0.3% | 615 | 0.3% | 615 | 0.4% | 615 | 0.3% | 615 | 0.3% |
| INSURANCE | 1,500 | 0.8% | 1,500 | 0.8% | 1,500 | 1.0% | 1,500 | 0.8% | 1,500 | 0.8% |
| TAX/LICENSE | 665 | 0.4% | 665 | 0.4% | 665 | 0.4% | 665 | 0.4% | 665 | 0.3% |
| DEPRN/AMORTN | - | 0.0% | - | 0.0% | - | 0.0% | - | 0.0% | - | 0.0% |
| OCCUPANCY: | 12,271 | 6.9% | 12,819 | 6.8% | 11,178 | 7.2% | 12,345 | 6.9% | 12,960 | 6.8% |
| STORE INCOME | (3,040) | -1.7% | 226 | 0.1% | (9,560) | -6.2% | (2,602) | -1.5% | 1,064 | 0.6% |

**Church and State - Planned Cash Flow Pro**

| | November-18 | | December-18 | | January-19 | | February-19 | | March-19 | |
|---|---|---|---|---|---|---|---|---|---|---|
| **Beginning Cash Balance** | 5,418 | | 2,809 | | 9,818 | | 18,376 | | 21,538 | |
| **Ending Cash Balance** | 2,809 | | 9,818 | | 18,376 | | 21,538 | | 21,342 | |
| **\*\*NET SALES\*\* (Assumes 3% increase)** | | | | | | | | | | |
| FOOD SALES: | 118,193 | 66.1% | 140,357 | 66.1% | 143,924 | 66.1% | 131,490 | 66.1% | 123,756 | 66.1% |
| BEER/WINE SALES | 35,376 | 19.8% | 42,009 | 19.8% | 43,077 | 19.8% | 39,356 | 19.8% | 37,041 | 19.8% |
| LIQUOR SALES | 17,438 | 9.8% | 20,708 | 9.8% | 21,235 | 9.8% | 19,400 | 9.8% | 18,259 | 9.8% |
| BEVERAGE SALES: | 7,727 | 4.3% | 9,176 | 4.3% | 9,409 | 4.3% | 8,596 | 4.3% | 8,091 | 4.3% |
| | 178,734 | 100.0% | 212,250 | 100.0% | 217,645 | 100.0% | 198,841 | 100.0% | 187,146 | 100.0% |
| **\*\*COST OF SALES\*\*** | | | | | | | | | | |
| FOOD COST OF SALES | 33,094 | 28.0% | 39,300 | 28.0% | 40,299 | 28.0% | 36,817 | 28.0% | 34,652 | 28.0% |
| BEER/WINE COST OF SALES | 9,905 | 28.0% | 11,763 | 28.0% | 12,062 | 28.0% | 11,020 | 28.0% | 10,371 | 28.0% |
| LIQUOR COST OF SALES | 2,790 | 16.0% | 3,313 | 16.0% | 3,398 | 16.0% | 3,104 | 16.0% | 2,921 | 16.0% |
| BEVERAGE COST OF SALES | 1,468 | 19.0% | 1,743 | 19.0% | 1,788 | 19.0% | 1,633 | 19.0% | 1,537 | 19.0% |
| **TOTAL COST SALES** | 47,258 | 26.4% | 56,119 | 26.4% | 57,546 | 26.4% | 52,574 | 26.4% | 49,482 | 26.4% |
| **TOTAL GROSS MARGIN** | 131,477 | 73.6% | 156,131 | 73.6% | 160,100 | 73.6% | 146,267 | 73.6% | 137,665 | 73.6% |
| **PAYROLL:** | | | | | | | | | | |
| INSIDER SALARIES | 12,500 | 7.0% | 12,500 | 5.9% | 12,500 | 5.7% | 12,500 | 6.3% | 12,500 | 6.7% |
| RESTAURANT PAYROLL | 58,943 | 33.0% | 66,887 | 31.5% | 68,165 | 31.3% | 63,709 | 32.0% | 60,937 | 32.6% |
| **TOTAL PAYROLL** | 71,443 | 40.0% | 79,387 | 37.4% | 80,665 | 37.1% | 76,209 | 38.3% | 73,437 | 39.2% |
| **BENEFITS:** | | | | | | | | | | |
| TOTAL BENEFITS | 18,699 | 10.5% | 21,480 | 10.1% | 21,928 | 10.1% | 20,367 | 10.2% | 19,397 | 10.4% |
| **TOTAL LABOR** | 90,142 | 50.4% | 100,867 | 47.5% | 102,594 | 47.1% | 96,576 | 48.6% | 92,834 | 49.6% |
| **PRIME COSTS** | 137,399 | 76.9% | 156,986 | 74.0% | 160,139 | 73.6% | 149,150 | 75.0% | 142,316 | 76.0% |
| **CONTROLLABLES:** | | | | | | | | | | |
| SUPPLIES | | | | | | | | | | |
| CLEANING | 894 | 0.5% | 1,061 | 0.5% | 1,088 | 0.5% | 994 | 0.5% | 936 | 0.5% |
| PACKAGING | 268 | 0.2% | 318 | 0.2% | 326 | 0.2% | 298 | 0.2% | 281 | 0.2% |
| OFFICE | 45 | 0.0% | 53 | 0.0% | 54 | 0.0% | 50 | 0.0% | 47 | 0.0% |
| OPERATING | 1,787 | 1.0% | 2,123 | 1.0% | 2,176 | 1.0% | 1,988 | 1.0% | 1,871 | 1.0% |
| UNIFORMS | 45 | 0.0% | 53 | 0.0% | 54 | 0.0% | 50 | 0.0% | 47 | 0.0% |
| DUES/SUBSCRIPTIONS | 89 | 0.1% | 106 | 0.1% | 109 | 0.1% | 99 | 0.1% | 94 | 0.1% |
| OUTSIDE SERVICES | | | | | | | | | | |
| LINEN | 1,787 | 1.0% | 2,123 | 1.0% | 2,176 | 1.0% | 1,988 | 1.0% | 1,871 | 1.0% |
| JANITORIAL | 75 | 0.0% | 75 | 0.0% | 75 | 0.0% | 75 | 0.0% | 75 | 0.0% |
| POSTAGE/DEL. | 50 | 0.0% | 50 | 0.0% | 50 | 0.0% | 50 | 0.0% | 50 | 0.0% |

**Church and State - Planned Cash Flow Pr(**

| | November-18 | % | December-18 | % | January-19 | % | February-19 | % | March-19 | % |
|---|---|---|---|---|---|---|---|---|---|---|
| DISPLAYS | 287 | 0.2% | 287 | 0.2% | 287 | 0.1% | 287 | 0.1% | 287 | 0.2% |
| EXTERMINATION | 110 | 0.1% | 110 | 0.1% | 110 | 0.1% | 110 | 0.1% | 110 | 0.1% |
| CABLE TV | 400 | 0.2% | 400 | 0.2% | 400 | 0.2% | 400 | 0.2% | 400 | 0.2% |
| REPAIRS/MNTNCE | | | | | | | | | | |
| VARIABLE | 2,681 | 1.5% | 3,184 | 1.5% | 3,265 | 1.5% | 2,983 | 1.5% | 2,807 | 1.5% |
| SMALLWARES | | | | | | | | | | |
| DINING ROOM | 89 | 0.1% | 106 | 0.1% | 109 | 0.1% | 99 | 0.1% | 94 | 0.1% |
| KITCHEN | 89 | 0.1% | 106 | 0.1% | 109 | 0.1% | 99 | 0.1% | 94 | 0.1% |
| UTILITIES | | | | | | | | | | |
| ELECTRICITY | 3,300 | 1.8% | 3,300 | 1.8% | 3,300 | 1.6% | 3,300 | 1.5% | 3,300 | 1.8% |
| GAS | 1,100 | 0.6% | 1,100 | 0.6% | 1,100 | 0.5% | 1,100 | 0.5% | 1,100 | 0.6% |
| TELEPHONE | 215 | 0.1% | 215 | 0.1% | 215 | 0.1% | 215 | 0.1% | 215 | 0.1% |
| WATER | 550 | 0.3% | 550 | 0.3% | 550 | 0.3% | 550 | 0.3% | 550 | 0.3% |
| GARBAGE | 550 | 0.3% | 550 | 0.3% | 550 | 0.3% | 550 | 0.3% | 550 | 0.3% |
| TRAVEL & MEALS | | | | | | | | | | |
| Travel/Meals/Research | 250 | 0.1% | 250 | 0.1% | 250 | 0.1% | 250 | 0.1% | 250 | 0.1% |
| EMPL GOODWILL | | | | | | | | | | |
| PARTIES | 167 | 0.1% | 167 | 0.1% | 167 | 0.1% | 167 | 0.1% | 167 | 0.1% |
| COMP MEALS | | | | | | | | | | |
| GUESTS | 1,341 | 0.8% | 1,592 | 0.8% | 1,632 | 0.8% | 1,491 | 0.8% | 1,404 | 0.8% |
| EMPLOYEES | 53 | 0.0% | 62 | 0.0% | 64 | 0.0% | 59 | 0.0% | 55 | 0.0% |
| DONATIONS | 298 | 0.2% | 354 | 0.2% | 363 | 0.2% | 332 | 0.2% | 312 | 0.2% |
| MANAGERS | 88 | 0.0% | 104 | 0.0% | 107 | 0.0% | 98 | 0.0% | 92 | 0.0% |
| **CONTROLLABLES** | 16,608 | 9.3% | 18,399 | 9.3% | 18,688 | 8.7% | 17,682 | 8.6% | 17,057 | 9.1% |
| | | | | | | | | | | |
| **NON-CONTROLLABLES:** | | | | | | | | | | |
| STORE AD/PROMO | 2,083 | 1.2% | 2,083 | 1.2% | 2,083 | 1.0% | 2,083 | 1.0% | 2,083 | 1.1% |
| CASH/BANKING | | | | | | | | | | |
| CREDIT CARDS | 4,826 | 2.7% | 5,731 | 2.7% | 5,876 | 2.7% | 5,369 | 2.7% | 5,053 | 2.7% |
| BANK FEES | 150 | 0.1% | 150 | 0.1% | 150 | 0.1% | 150 | 0.1% | 150 | 0.1% |
| PAYROLL SVCS. | 375 | 0.2% | 375 | 0.2% | 375 | 0.2% | 375 | 0.2% | 375 | 0.2% |
| ADMINISTRATIVE | | | | | | | | | | |
| OWNER R&D | - | | - | | - | | - | | - | |
| ACCTNG/TAX | 3,850 | 2.2% | 3,850 | 2.2% | 3,850 | 1.8% | 3,850 | 1.9% | 3,850 | 2.1% |
| LEGAL FEES | - | 0.0% | - | 0.0% | - | 0.0% | - | 0.0% | - | 0.0% |
| CONSULTING | 458 | 0.3% | 458 | 0.3% | 458 | 0.2% | 458 | 0.2% | 458 | 0.2% |
| MANAGEMENT FEE (3%) | - | 0.0% | - | 0.0% | - | 0.0% | - | 0.0% | - | 0.0% |
| LPP LEGAL FEES | 3,000 | 1.7% | 3,000 | 1.7% | 3,000 | 1.4% | 3,000 | 1.5% | 3,000 | 1.6% |
| RECRUITMENT & TRAINING | 250 | 0.1% | 250 | 0.1% | 250 | 0.1% | 250 | 0.1% | 250 | 0.1% |
| **NON-CONTROLLABLES** | 14,992 | 8.4% | 15,897 | 8.4% | 16,043 | 7.5% | 15,535 | 7.8% | 15,220 | 8.1% |
| | | | | | | | | | | |
| **MANAGED INCOME** | 9,734 | 5.4% | 20,967 | 5.4% | 22,775 | 9.9% | 16,473 | 8.3% | 12,554 | 6.7% |

**Church and State - Planned Cash Flow Pr**

| | November-18 | | December-18 | | January-19 | | February-19 | | March-19 | |
|---|---|---|---|---|---|---|---|---|---|---|
| OCCUPANCY: | | | | | | | | | | |
| MINIMUM RENT | 4,918 | 2.8% | 4,918 | 2.3% | 4,918 | 2.3% | 4,918 | 2.5% | 4,918 | 2.6% |
| PCT RENT | 3,603 | 2.0% | 5,216 | 2.5% | 5,476 | 2.5% | 4,571 | 2.3% | 4,008 | 2.1% |
| STORAGE RENT | 200 | 0.1% | 200 | 0.1% | 200 | 0.1% | 200 | 0.1% | 200 | 0.1% |
| EQUIP. RENTAL | 100 | 0.1% | 100 | 0.0% | 100 | 0.0% | 100 | 0.1% | 100 | 0.1% |
| AREA MNTNCE | 743 | 0.4% | 743 | 0.4% | 743 | 0.3% | 743 | 0.4% | 743 | 0.4% |
| PRPRTY TAXES | 615 | 0.3% | 615 | 0.3% | 615 | 0.3% | 615 | 0.3% | 615 | 0.3% |
| INSURANCE | 1,500 | 0.8% | 1,500 | 0.7% | 1,500 | 0.7% | 1,500 | 0.8% | 1,500 | 0.8% |
| TAX/LICENSE | 665 | 0.4% | 665 | 0.3% | 665 | 0.3% | 665 | 0.3% | 665 | 0.4% |
| DEPRN/AMORTN | - | 0.0% | - | 0.0% | - | 0.0% | - | 0.0% | - | 0.0% |
| OCCUPANCY: | 12,344 | 6.9% | 13,958 | 6.6% | 14,217 | 6.5% | 13,312 | 6.7% | 12,749 | 6.8% |
| STORE INCOME | (2,609) | -1.5% | 7,010 | 3.3% | 8,558 | 3.9% | 3,161 | 1.6% | (195) | -0.1% |

# Exhibit C
# Administrative Expense Claims

*In re Church & State*
**Case No. 2:17-bk-18767-BR**

**Exhibit C**
**Administrative Expense Claims**

| <u>Name</u> | <u>Amount Owed</u> | <u>Treatment</u> |
|---|---|---|
| Clerk's Office Fees | $0 (estimated) | Paid in full on the Effective Date. |
| Office of the U.S. Trustee Fees | $0 (estimated) | Paid in full on the Effective Date. |
| Lesnick Prince & Pappas LLP ("LPP"), the Debtor's bankruptcy counsel | $75,000 (estimated amount owed in excess of retainer on the Effective Date) | Paid on the Effective Date or on such other terms as the Debtor and LPP may agree. |
| **TOTAL** | **$75,000 (estimated) (the "Administrative Claims")** | |

# Exhibit D
# List of Unsecured Creditors

## Exhibit F: General Unsecured Claims, in Class 4A or 4B

| Claim Information: Name / Description / Endnotes | Insider Y? | Scheduled Claims D/C/U Amount | Filed Claims POC# | Filed Claims Amount | Obj. Dkt.# | Presumed Amt. §502(a)/1111(a) | Order Dkt.# | Adjusted Amt. (if any) | Dividend (from Ex.A) % |
|---|---|---|---|---|---|---|---|---|---|
| 1.**Manual Option:** total from bankr. Sched. F.→ | | $  - | Copy attached/at docket no.→ | | | | | | |
| 2.Minus any claims manually reduced/deleted→ | | $  - | | | | | | | |
| 3.Plus any claims manually increased/added→ | | $  - | | | | | | | Plan Payments: |
| 4. Subtotal, *manually* estimated claims (ln.1 to 3): | | $  - | | $  - | | $  - | | | $ |
| 5.**Electronic Option:** *in addition, or in the alternative, some or all claims may be listed individually below* | | | | | | | | | |
| American Paper & Plastic, Inc. | | $ 2,626.09 | | $  - | | $ 2,626.09 | | $  - | $ |
| Big Biscuit Inc. | | $ 103,147.00 | | $  - | | $ 103,147.00 | | $  - | $ |
| Bread Lounge LLC | | $ 1,463.58 | | $  - | | $ 1,463.58 | | $  - | $ |
| Buchalter | | $ 18,796.08 | 1 | $ 18,796.08 | | $ 18,796.08 | | $  - | $ |
| Duclot la Vinicole California | | $ 1,254.00 | | $  - | | $ 1,254.00 | | $  - | $ |
| Southern California Gas Company | | $  - | 5 | $ 321.11 | | $ 321.11 | | $  - | $ |
| Gourmet Imports | | $ 1,533.85 | | $  - | | $ 1,533.85 | | $  - | $ |
| Internal Revenue Service | | $  - | 4 | $ 31,500.95 | | $ 31,500.95 | | $  - | $ |
| Jeff Welburn Selections | | $ 840.00 | 6 | $ 2,010.00 | | $ 2,010.00 | | $  - | $ |
| JMS A/C & Heating Inc. | | $ 400.00 | | $  - | | $ 400.00 | | $  - | $ |
| 6.Estimated "rejection" claims (see Ex.B)↓ (If there are more rejection claims than the two rows below, then use any blank row for more claims) | | | | | | | | | |
| | | | | $  - | | $  - | | $  - | $ |
| | | | | $  - | | $  - | | $  - | $ |
| 7a.Deficiency class 2A (estimated in Ex.E) | | | | | | $  - | | $  - | $ |
| 7b.Deficiency class 2B (estimated in Ex.E) | | | | | | $  - | | $  - | $ |
| 7c.Deficiency class 2C (estimated in Ex.E) | | | | | | $  - | | $  - | $ |
| 8.Ex.F-Continuation Sheet (if any) | | $ 181,800.46 | | $ 14,234.91 | | $ 55,267.10 | | $  - | $ |
| 9.**Totals** (ln.4 to 8) | | $ 311,861.06 | | $ 66,863.05 | + | $ 218,319.76 | | $  - | $ |
| 10.Grand Total | | | | Presumed Amounts + any Adjusted Amounts→ | | | | $ 218,319.76 | $ |

**Instructions to Plan Proponent:**
(1) **Quick start:** Enter an estimated *rough total* in the first row (manual option). Later on you can revise the amount and break it down by individual claim (if required).
(2) **Data entry:** If using the electronic option, copy data from (a) bankruptcy Schedule F and (b) the court's claims register. The spreadsheet will automatically calculate the "Presumed Amt." (if any) and you can override that with an "Adjusted Amt." if appropriate (e.g., if the court has reduced or disallowed the claim).

This form is optional. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 3018-1.CH11.PLAN-DS.EXHIBITS**

**Exhibit F: General Unsecured Claims, in Class 4A or 4B**

| Claim Information: Name / Description / Endnotes | Insider Y? | Scheduled Claims | | Filed Claims | | Obj. | Presumed Amt. | Order | Adjusted Amt. | Dividend (from Ex.A) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | D/C/U | Amount | POC# | Amount | Dkt.# | §502(a)/1111(a) | Dkt.# | (if any) | % |
| **EX.F-CONTINUATION SHEET** | Additional Rows (if needed) | | | | | | | | | |
| Regal Wine Company | | | $ 1,567.50 | | $ - | | $ 1,567.50 | | $ | $ - |
| Lawrence Moore & Associates | | | $ 1,250.00 | | $ - | | $ 1,250.00 | | $ | $ - |
| L.A. County Treasurer & Tax Collector | | D | $ 2,537.95 | 2 | $ 2,537.95 | | $ 2,537.95 | | $ | $ - |
| Luxe Seafood | | | $ 5,844.65 | | $ - | | $ 5,844.65 | | $ | $ - |
| 673 Mateo LLC | | U | $ 130,770.19 | | $ - | | $ - | | $ | $ - |
| Morgan Services, Inc. | | | $ 4,035.61 | | $ - | | $ 4,035.61 | | $ | $ - |
| Orphmedia LLC | | | $ 600.00 | | $ - | | $ 600.00 | | $ | $ - |
| See Endnote F1 on Ex. H | | | $ 5,452.95 | 7 | $ 6,044.42 | | $ 6,044.42 | | $ | $ - |
| RFMG, Inc. | | | $ 2,870.00 | | $ - | | $ 2,870.00 | | $ | $ - |
| Rocker Bros Meat & Provision Inc. | | | $ 13,113.51 | | $ - | | $ 13,113.51 | | $ | $ - |
| Scarborough Farms | | | $ 2,696.00 | | $ - | | $ 2,696.00 | | $ | $ - |
| West Central Produce Inc. | | | $ 2,007.18 | 3 | $ 5,652.54 | | $ 5,652.54 | | $ | $ - |
| Worldwide Produce | | | $ 8,639.53 | | $ - | | $ 8,639.53 | | $ | $ - |
| Young's Market Company | | | $ 415.39 | | $ - | | $ 415.39 | | $ | $ - |
| Ivan Lopez-Marquez | | DCU | $ - | | $ - | | $ - | | $ | $ - |
| Gerardo Nunez | | DCU | $ - | | $ - | | $ - | | $ | $ - |
| Andres Plessis | | DCU | $ - | | $ - | | $ - | | $ | $ - |
| | | | $ - | | $ - | | $ - | | $ | $ - |
| 7d.Deficiency class 2D (estimated in Ex.E) | | | | | | | $ - | | $ | $ - |
| 7e.Deficiency class 2E (estimated in Ex.E) | | | | | | | $ - | | $ | $ - |
| 7f.Deficiency class 2F (estimated in Ex.E) | | | | | | | $ - | | $ | $ - |
| 7g.Deficiency class 2G (estimated in Ex.E) | | | | | | | $ - | | $ | $ - |
| 7h.Deficiency class 2H (estimated in Ex.E) | | | | | | | $ - | | $ | $ - |
| 7i.Deficiency class 2I (estimated in Ex.E) | | | | | | | $ - | | $ | $ - |
| 7j.Deficiency class 2J (estimated in Ex.E) | | | | | | | $ - | | $ | $ - |
| 7k.Deficiency class 2K (estimated in Ex.E) | | | | | | | $ - | | $ | $ - |

June, 2014     This form is optional. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

F 3018-1.CH11.PLAN-DS.EXHIBITS

# Exhibit E
# List of Equity Interests

*In re Church & State*
**Case No. 2:17-bk-18767-BR**

**Exhibit E
List of Equity Interests**

The Debtor's equity holders are:

| <u>Name</u> | <u>Nature of Interest</u> | <u>Equity Share</u> |
|---|---|---|
| Big Biscuit, Inc. | General Partner | 1.00% |
| Shamsi Katebi | Limited Partner | 15.50% |
| Heather Buchak | Limited Partner | 1.79% |
| Harvey Miller | Limited Partner | 5.37% |
| Asher Atias | Limited Partner | 7.16% |
| Claudia Moeller | Limited Partner | 3.58% |
| Erik Stein | Limited Partner | 5.36% |
| Wick Architecture & Design Inc. | Limited Partner | 6.56% |
| Andrew Lindley | Limited Partner | 2.97% |
| Lynn Lerman | Limited Partner | 3.58% |
| Yassmin Sarmadi | Limited Partner | 32.81% |
| <u>Tony Esnault</u> | Limited Partner | <u>14.32%</u> |
| **Total** | | **100.00%** |

# Exhibit F
# Unexpired Leases & Executory Contracts

*In re Church & State*
**Case No. 2:17-bk-18767-BR**

## Exhibit F
## Treatment of Executory Contracts and Unexpired Leases

**1.      Assumptions**

On the Effective Date, the Debtor intends to assume the following executory contracts and leases:

- None

     a.      Real property lease for Debtor's restaurant location:

        <u>Location</u>:
        850 Industrial Street, #100
        Los Angeles, California 90021

        <u>Lessor</u>:
        673 Mateo, LLC
        1855 Industrial Street, #106
        Los Angeles, California 90021

**2.      Rejections**

a.      Management agreement with Big Biscuit, Inc.


b.      The Debtor is not aware of any other executory contracts or unexpired leases.  However, the Debtor reserves the right to reject any executory contract or unexpired lease on or before confirmation of the Plan.  Any executory contract or unexpired lease not expressly assumed by Order of the Bankruptcy Court or through the Plan shall be deemed rejected on the Effective Date.

3.    **Other Treatment**

a.    Real property lease for Debtor's restaurant (the "Lease"):

<u>Location</u>:
850 Industrial Street, #100
Los Angeles, California 90021

<u>Lessor</u>:
673 Mateo, LLC
1855 Industrial Street, #106
Los Angeles, California 90021.

The Lease shall be treated as provided in the treatment of the
Class 4(c) – Landlord Claim, described in Exhibit A.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

Lesnick Prince & Pappas LLP, 315 W. Ninth St., Suite 705, Los Angeles, CA 90015

A true and correct copy of the foregoing document entitled (*specify*): **DISCLOSURE STATEMENT DESCRIBING PLAN OF REORGANIZATION DATED SEPTEMBER 22, 2017** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 09/22/2017, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Andrew R Cahill**     acahill@lesnickprince.com, jmack@lesnickprince.com;mlampton@lesnickprince.com
- **Matthew A Lesnick**     matt@lesnickprince.com, matt@ecf.inforuptcy.com;jmack@lesnickprince.com
- **Ron Maroko**     ron.maroko@usdoj.gov
- **Christopher E Prince**     cprince@lesnickprince.com, jmack@lesnickprince.com;mlampton@lesnickprince.com;cprince@ecf.courtdrive.com
- **United States Trustee (LA)**     ustpregion16.la.ecf@usdoj.gov
- **Pamela Kohlman Webster**     pwebster@buchalter.com, smartin@buchalter.com

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) 09/22/2017, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Honorable Barry Russell
U.S. Bankruptcy Court
255 E. Temple Street, Suite 1660
Los Angeles, CA 90012

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 09/22/2017 | Matthew A. Lesnick | /s/Matthew A. Lesnick |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.